463 So.2d 1264 (1985)
KUSWA & ASSOCIATES, INC., General Contractors
v.
THIBAUT CONSTRUCTION CO., INC.
No. 83-C-2646.
Supreme Court of Louisiana.
February 25, 1985.
Rehearing Denied April 11, 1985.
*1265 Mack E. Barham, Robert E. Arceneaux, Barham & Churchill, Barbara Treuting Casteix, Carl W. Cleveland & Associates, New Orleans, for defendant-applicant.
Terrence J. Lestelle, New Orleans, Amato & Creely, Gretna, for plaintiff-respondent.
LEMMON, Justice.
This is an action by Kuswa & Associates against Thibaut Construction Co. to recover damages, primarily loss of profits, caused by Thibaut Construction Co.'s allegedly illegal termination of a construction contract.
The dispute involved Kuswa's subcontracting work on a construction project in which Thibaut was the general contractor in the construction of fourplex buildings. Kuswa was paid for all of the work that it performed during the seven months it spent on the project (except for $3,029.50 withheld in connection with labor liens). However, Kuswa contended that Thibaut had guaranteed Kuswa the subcontracting work on all 62 buildings involved in the project and that Thibaut's illegal termination of the contract deprived Kuswa of the profits it would have made on the buildings constructed after the termination. On the other hand, Thibaut's position was that its contracts with Kuswa did not contemplate work on any specific number of buildings, so that Kuswa's only possible relief involved the disputed claim for completed work. Thibaut also sought by reconventional demand the costs incurred in remedying unsatisfactory work performed by Kuswa.
The trial court awarded Kuswa most of its claim based on the unpaid invoice for work performed, but denied entirely its claim for loss of profits, concluding that the contracting parties had intended that the subcontracting work be performed on a building-by-building basis. The court of appeal amended the judgment and awarded Kuswa an additional $130,840.25 for loss of profits on unperformed work, holding that the parties intended a contract for 62 buildings. 440 So.2d 1338. We granted certiorari, being primarily concerned with the intermediate court's (1) reversal of the trial court's findings regarding the intention of the contracting parties and (2) method of measuring damages and disregard for Kuswa's failure to mitigate damages. 445 So.2d 428. We now reverse on the basis that there was no manifest error in the trial court's finding as to the intention of the parties to the construction contract.[1]
Trianon Square was a subdivision of 65 vacant lots. Thibaut's officers had formed a partnership which purchased the raw land and constructed the off-site improvements, intending to have Thibaut construct fourplex buildings to be retained by the developers. However, because permanent financing was unavailable for the planned construction of buildings, Thibaut's officers decided to transfer lots to Thibaut in small groups and for Thibaut to construct and sell completed buildings to third parties or to individual partners.
In connection with this project, Kuswa submitted a proposal to Thibaut on February 9, 1979 to perform the painting work on individual fourplexes for $2,850 per building and the sheetrock work for 14.5 cents per square foot. The proposal was "Good for 30 Days from above Date". The three-page document also contained the details of the work to be performed and further stated: "This bid is contingent on Kuswa & Associates, Inc., doing the same work on all four-plexes which are sixty-two (62) in number."
On March 28, 1979, Thibaut and Kuswa executed a "Sub-Contractor Base Agreement", whereby Kuswa agreed to furnish certain labor and materials in accordance with plans and specifications. The agreement, completed on Thibaut's printed form, listed the type of work as "Painting and Sheetrock." Article 1 contained the printed *1266 words "The work to be performed hereunder is generally described as:", and in the following blank space were typed the words "Bid from Kuswa & Associates, Inc.". At the bottom of the one-page agreement, under the printed words "Price Lists", were the typed words "See attachment schedule A" and "See attachment schedule B".
Attached to the agreement were three sheets typed on Kuswa's letterheads. Attachment A listed the completion steps for painting work and the payment schedule, the total amount being $2,850. Attachment B listed the completion steps for sheetrock work and the payment schedule per square foot, the total amount being 14.5 cents.[2] Nothing in the Sub-Contractor Base Agreement or in the three attachments expressly provided that Kuswa was to perform painting and sheetrock work on any particular number of buildings. The February 9 proposal submitted by Kuswa was not attached to the Sub-Contractor Base Agreement nor expressly incorporated into it. The only arguable reference to the February 9 proposal in the March 28 contract was the use of the term "Bid by Kuswa & Associates, Inc." to refer to the general description of the work.
The court of appeal decision was based on the factual finding that the parties intended to incorporate the February 9 proposal into the March 28 contract and to bind Thibaut to use Kuswa for painting and sheetrock work in 62 buildings. After reviewing the record, we conclude that the intermediate court merely substituted its judgment as to the intent of the parties for the judgment of the trial judge, who found that the term "Bid by Kuswa & Associates, Inc." in the March 28 contract was intended to refer to Attachments A and B (which were also prepared by Kuswa). Since the trial judge's factual finding as to intent was reasonable and was adequately supported by credible evidence in the record, the intermediate court erred when it failed either to accord deference to that finding or to articulate the reason that the finding was manifestly erroneous. See Cantor v. Koehring Co., 283 So.2d 716 (La.1973).
In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. La.C.C. Art. 2045 (formerly C.C. Art. 1950). Intent is an issue of fact which is to be inferred from all of the surrounding circumstances.[3]
Although Robert and Thomas Kuswa testified that they were promised by Thibaut's general manager and superintendent that they would be allowed to perform the painting and sheetrock work on 62 buildings, the general manager denied any such promise. Such conflicting testimony should be resolved on appellate review in favor of the party who prevailed on the issue in the trial court. Moreover, the background of uncertainty as to financing and overall development at the time of the March 28 contract supported the trial court's conclusion that the parties did not intend for Thibaut to be bound on a contract covering all 62 buildings.[4] This conclusion is further enforced by the fact that the contract contained the following express provision:
"13) This agreement, the approved price list attached hereto, the plans and specifications, and the individual Work Orders issued on each job constitute the entire contract, and there are no other agreements, oral or written by and between *1267 the parties hereto." (Emphasis supplied.)
Additionally, Article 1 of the March 28 contract left a blank space to be completed with a general description of the work, and if the word "Bid" was intended to refer to the February 9 proposal, only the work description in the proposal could reasonably have been intended for adoption by reference.[5] Finally, Kuswa concedes that the contract could have been terminated at any time by written notice, and it would be absurd to conclude that the parties contemplated loss of profits for unperformed work as the measure of damages for improper termination of such a contract.[6]
In summary, the overall evidence supports the trial judge's conclusion that the parties contemplated that Kuswa would work under the contract on a building-by-building basis. It is evident that the parties intended (as Kuswa contends) that Kuswa would work on more than one building. However, since no particular building or number of buildings was specified in the contract, the parties apparently intended for the contract price and work details to apply to each building to which Kuswa was assigned to work. Such an intent was reasonably inferred from the circumstances surrounding the contract, and the trial court was not clearly wrong in finding that this was the intent of the contracting parties.
Accordingly, the judgment of the court of appeal is set aside, and the judgment of the district court is reinstated.
DIXON, C.J., concurs.
NOTES
[1] It is therefore unnecessary to address the issue of damages.
[2] The third attached sheet, Attachment I, listed modifications of certain other articles in the printed agreement. These modifications were pertinent to this particular subcontractor and are not at issue in this litigation.
[3] Apparently, Thibaut completed the blank space in Article I, but Kuswa drafted the attachments, so the rule of construction that an ambiguity in a contract is construed against the party who drafted it is really not applicable. Moreover, that rule applies only "(i)n case of doubt that cannot be otherwise resolved". La.C.C. Art. 2056.
[4] At no point during the entire project was financing available for more than a few buildings at one time.
[5] The conclusion that Article 1 was intended as a general reference to work to be performed is supported by the other contracts executed by the parties. The parties subsequently executed five additional agreements, using the same standard form contract. In Article 1 of each of the agreements (calling for a general description of the work to be performed) were the simple words "sheetrock", "carpentry trim", or "framing".
[6] Kuswa did not claim that it adjusted its bid price downward, purchased or leased special equipment, declined other contracts or invitations to bid, or otherwise changed its usual method of operation in detrimental reliance on a representation that it would be allowed to perform painting and sheetrock work on 62 buildings. Kuswa sought damages only for loss of profits on painting and sheetrock work performed by other contractors after Kuswa was terminated.