COVINGTON, Chief Judge.
This is an action brought by Riverside/Terra Corporation against K & W Agricultural Services, Inc., Leon C. Winters and Kenneth Kahao to recover the amount of $129,665.10, plus interest, attorney fees and costs. In this proceeding, plaintiff sued to enforce a warehouse agreement between itself and the defendant corporation, and a continuing guaranty signed by the defendants Winters and Kahao. The defendants Winters and Ka-hao denied liability under the continuing guaranty on several grounds, although admitting they had executed it. The defendant corporation denied that the warehouse agreement was enforceable by the plaintiff, and the individual defendants denied executing the warehouse agreement. Certain other affirmative defenses were asserted by defendants.
The trial court rendered judgment in favor of Riverside/Terra Corporation and against K & W Agricultural Services, Inc., Leon C. Winters and Kenneth H. Kahao, jointly, severally and solidarily, in the principal amount prayed for, with interest fixed at 18% per annum from March 25, 1985, until paid, attorney fees in the amount of $2,999.83 and costs.
This judgment is on appeal to this court. We affirm.
The evidence establishes that on December 9, 1982, K & W Agricultural Services, Inc. was incorporated. On December 13, 1982, a warehouse agreement was executed between Terra Chemicals International, Inc. and any of its subsidaries and K & W Agricultural Services, Inc. Terra Chemicals International, Inc. is the parent company of Riverside/Terra Corporation, the plaintiff.
Following the execution of the warehouse agreement, on December 16, 1982, Winters and Kahao, the principal owners of K & W Agricultural Services, Inc. signed a continuing guaranty in favor of plaintiff in order to establish a line of credit for defendant corporation.
Subsequently, a new warehouse agreement was entered on February 23, 1983, between Riverside/Terra Corporation and K & W Agricultural Services, Inc. Credit was then extended to K & W, and the evidence shows that a principal balance of $129,665.10 was owed to the plaintiff.
In reaching his judgment in favor of plaintiff, the trial judge found that a valid contract existed from the date of the first warehouse agreement, and that there was no merit to defendants’ assertion that no obligation had been incurred at that time. The court also found the second warehouse agreement to be valid, and that the continuing guaranty which guaranteed the payment of “any and all indebtedness” of the defendant corporation obligated the guarantors, the individual defendants, to pay on default of the defendant corporation. The evidence shows a default.
The individual defendants further argued that they, as sureties, were not liable under the continuing guaranty because no fixed amount was set out in the guaranty. The trial judge found that the leaving of the amount blank “was intentional and the amount of liability was unlimited.” The trial judge further found that the continuing agreement provided for attorney fees and costs.
ASSIGNMENT OF ERROR NUMBER ONE
Appellants contend that the trial court erred in finding that a contract existed between K & W and Riverside/Terra before both parties entered into the warehouse agreement dated February 23, 1983.
Our review of the record convinces us that there is no merit to this argument. In Segura v. Louisiana Architects Selection Board, 340 So.2d 369 (La.App. 1 Cir.1976), writ denied, 342 So.2d 676 (La.1977), this *458 Court set forth the law concerning the issue raised by appellants.
In Segura, supra at 371, this Court discussed three different lines of authority regarding negotiation of contracts. Following this discussion the court held that:
We conclude that, if the facts of the case reveal that the parties did not intend to be bound until the execution of a written document, no contract can exist until that event takes place. However, even when a written document is contemplated, if the parties intend to be bound by their original verbal agreement, then a contract subsists from that time, and the writing, if executed, is a memorial of that agreement.
There is nothing in the record which would indicate that the parties’ agreement was contingent on a subsequent written document. None of the parties testified that there would be no contract unless the agreement was reduced to writing. The parties entered into a binding verbal contract, which was subsequently reduced to writing. We hold that the written contract is a memorial of the prior verbal agreement.
Moreover, the written contract was signed by Winters on behalf of K & W. Although not signed by Riverside/Terra, there was an agreement between the parties under those circumstances. In addition, the parties, on December 16, 1982, three days after the execution by Winters of the first “warehouse agreement”, signed the continuing guaranty. Later, on February 23, 1983, the parties signed the second “warehouse agreement”. Winters and Mi-chalski, Regional Credit Manager for plaintiff, testified that the second “warehouse agreement” was a continuation of the first one. This supports the finding of the trial court that all parties intended to be bound by the original agreement of December 13, 1982.
As previously stated, Winters signed the contract of December 13, 1982, but it was not signed by Riverside/Terra. Both parties signed the February 23, 1983 contract, which was a continuation of the December 13, 1982 document.
In Fredericks v. Fasnacht, 30 La.Ann. 117 (1878), the Court said:
It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete and it cannot be enforced until it is signed by all the parties.
Thus, even if the oral contract needed to be reduced to writing, under the Freder-icks case, supra, the oral contract would have been suspended only until the contract was reduced to writing. Under these circumstances, by signing the contract on December 13, 1982 and the second “warehouse agreement” on February 23, 1983, the suspensive condition would be satisfied, so that the contract relates back to the original agreement of December 13, 1982,
In McIntire v. Industrial Securities Corporation, 158 So. 849, 851 (La.App. Orl., 1935), the Court, in addressing this issue stated, as follows:
It is undoubtedly true that where, as in the Laroussini [v. Werlein, 52 La.Ann. 424 (1899)] Case, although the parties agreed upon all the terms, and yet both understand that the said terms are to be reduced to writing, and that on the execution of the said written document the contract shall come into being, there is no contract until the document is signed, and it is also true that where, as in the Knights of Pythias [v. Fishel, 168 La. 1095, 123 So. 724 (1929)] Case, the parties have agreed to all the essential *459 terms and the agreement is complete in itself, the refusal of one of the parties to sign the written document merely evidencing what has already been agreed to does not destroy the effect of the contract already verbally assented to.
Considering Mclntire, the fact that Riverside/Terra did not sign the first “warehouse agreement” does not affect the validity of that contract which had already been verbally assented to. The parties had verbally agreed, the contract was reduced to writing and signed by Winters on December 13, 1982, and the contract was continued by the signing of the February 23, 1983 agreement. These circumstances indicate that the parties intended to be bound and were bound as of December 13, 1982.
Furthermore, acceptance of a contract need not be expressed in such contract. It is not necessary that a contract be signed by the party in whose favor it is made; it is sufficient to show acceptance by some act which clearly indicates acceptance. See St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3 Cir.1983). All of plaintiffs actions following the first “warehouse agreement” manifest acceptance by it of that agreement.
Accordingly, since there was a valid contract between K & W and the creditor, there was an underlying obligation to support the suretyship agreement, which is enforceable against Winters and Kahao.
ASSIGNMENT OF ERROR NUMBER TWO
The appellants assert that the trial court erred in finding the Continuing Guaranty, effective as to the debts of K & W.
Appellant relies upon BNO Leasing Corporation v. Hollins & Hollins, Inc., 448 So.2d 1329 (La.App. 5 Cir.1984), writ denied, 450 So.2d 961 (La.1984), for the proposition that a continuing guaranty executed prior to the principal debt is unenforceable, citing La.C.C. art. 3035.
The dicta in BNO Leasing, 448 So.2d at 1335, does not correctly state the law. The revision of Article 3036 and the comments thereunder, do not change the law as it previously existed.
Art. 3036. Obligations for which sure-tyship may be established.
Suretyship may be established for any lawful obligation, which, with respect to the suretyship, is the principal obligation.
The principal obligation may be subject to a term or condition, may be presently existing, or may arise in the future.
COMMENTS
(a) The first Paragraph of this Article reproduces the substance of the first sentence of C.C. Art. 3036 (1870).
(b) The second Paragraph of this Article is new. It emphasizes the unqualified nature of the principal obligation and sets at rest speculation that has from time to time been raised as to whether suretyship can be given for future obligations although such contracts have been recognized in Louisiana from the earliest times. See Hubert, “Nature and Essentials of Conventional Suretyship,” 13 Tul.L.Rev. 519 (1939). A contract guaranteeing an obligation that is to arise in the future is a contract on a suspensive condition, and in this respect it makes no difference whether the creditor to whom it is given is bound to permit its creation or whether his arrangement with his debtor is facultative. The question of the validity of such contracts usually arises in the context of an attempt by the surety to terminate his promise before the obligation is incurred. See Bonura v. Christiana Bros. Poultry Co. of Gretna, Inc., 336 So.2d 881 (La. App. 4th Cir.1976), writ den. 339 So.2d 11. The right of a surety to terminate the contract is now regulated by Article 3061 (Rev.1987).
A continuing guaranty would be meaningless if it did not continue as security for all indebtedness of the debtor, particularly those obligations arising in the future, until properly terminated or revoked by the surety.
The trial court, in addressing this issue, stated that a contract of suretyship *460 is supported if a binding contract of any nature, written or oral, was entered into between the principal and the third party, citing Parish of East Baton Rouge v. Travelers Insurance Company, 342 So.2d 226 (La.App. 1 Cir.1976), writ denied, 344 So.2d 5 (La.1977). The court then held that a valid contract existed between the parties from the signing of the first warehouse agreement. The fact that no debt was actually incurred prior to the execution of the continuing guaranty is of no significance. There was an underlying obligation to be bound.
ASSIGNMENT OF ERROR NUMBER THREE
The appellants argue that the trial court erred in finding the Continuing Guaranty enforceable, where, although the document specifically required one, no dollar amount was provided in the agreement.
In the continuing guaranty, there is a blank to be used in filling a dollar amount of the guarantee if there is to be a limitation. In this document executed by the appellants, that blank was not filled in. The record established that it was left blank because the guarantee was to be an absolute and unconditional guarantee for all indebtedness of K & W.
By the written instrument Winters and Kahao clearly gave a continuing guaranty to Riverside/Terra Corporation agreeing to pay all debts incurred by K & W Agricultural Services, Inc., and that the instrument “shall be a continuing, absolute and unconditional guaranty and shall be in force and be binding upon the undersigned until the Indebtedness is fully paid and this guaranty is revoked as herein provided.” There are additional provisions, but they are expressly not in limitation of the foregoing guarantee of the full indebtedness of the debtor. The parties agreed that the sureties would be liable for all indebtedness of K & W to plaintiff which K & W failed to timely pay.
The final argument advanced by appellants is based upon Nu-Lite Electrical Wholesalers, Inc. v. Deckard & Treadaway Electric Air Conditioning & Refrigeration, 498 So.2d 120 (La.App. 5 Cir.1986). It pertains to the use of parol evidence to establish suretyship. Nu-Lite is not applicable to the instant case. Parol evidence is unnecessary to establish suretyship in this case because there is a written continuing guaranty which clearly establishes the obligation of these sureties to pay any and all indebtedness of K & W, the principal, without any limitation on the amount.
A contract of guaranty is equivalent to a contract of suretyship, and the two terms may be used interchangeably. A contract of guaranty is subject to the same rules of interpretation as contracts in general. An agreement legally entered into has the effect of law for those who formed them and it must be performed in good faith. The courts must give legal effect to all such contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. All clauses of an agreement are to be interpreted one by the other, giving to each the sense that results from the entire contract. A continuing guaranty is not required to observe technical formalities, but it must embody an expression of intent to be bound. The continuing guaranty as a suretyship agreement is an accessory promise by which the guarantor binds himself to satisfy the obligation if the principal debtor fails to do so. See Guaranty Bank & Trust Co. v. Jones, 489 So.2d 368 (La.App. 5 Cir.1986).
Applying these principles of contract interpretation and suretyship, we agree with the trial court that Leon C. Winters and Kenneth H. Kahao are obligated to pay Riverside/Terra Corporation the total unpaid balance of the indebtedness of K & W Agricultural Services, Inc., together with interest, attorney fees and costs. The judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.