550 So.2d 237 (1989)
SIZELER PROPERTY INVESTORS, INC.
v.
GORDON JEWELRY CORPORATION and United Jewelers & Distributors, Inc.
No. 88-CA-2142.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
Writ Denied November 10, 1989.
*238 J. David Forsyth, Patricia Diane Tunmer, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, for Sizeler Property Investors, Inc.
Harry A. Rosenberg, M. Nan Alessandra, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for Gordon Jewelry Corp.
Before GARRISON, KLEES, and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Gordon Jewelry Corporation (Gordon), appeals partial summary judgment in favor of plaintiff, Sizeler Property Investors, Inc. (Sizeler), as lessor, and against Gordon, as guarantor on a lease. The judgment awarded $1,082,041.95 in accelerated rents, charges and stipulated damages, plus an additional $219.18 per day for each day that the leased premises remained closed in violation of a continuous operation clause in the lease. Plaintiff appealed the judgment insofar as it denied plaintiff's request for attorney fees.
The issues before this court are: 1) whether a guaranty which pre-dates the principal obligation is valid and legally enforceable; 2) whether the trial court erred in finding that there was no genuine issue of material fact and that plaintiff was entitled to summary judgment as a matter of law as to (a) rent and charges under the lease; (b) stipulated damages; and (c) attorney fees.[1]
For the reasons assigned, we amend the judgment of the trial court, affirm in part as amended, and reverse in part.
FACTS
Sizeler is the current owner and lessor of the Southland Mall Shopping Center in Houma, Louisiana. By lease dated September 19, 1979, Sizeler's predecessors in interest leased to Leonard Krower & Son, Inc. (Leonard Krower) some 15,000 square feet of Southland. Harry B. Gordon signed the lease as President of Leonard Krower.
Also in September, 1979, a written guaranty was executed between Sizeler's predecessors in interest, as landlord, and Gordon, as guarantor on the lease. Gordon thereby guaranteed "performance by (Leonard Krower) under said lease, during the original term and any extension or renewal thereof, of all obligations ... under said lease...." Harry B. Gordon also signed the guaranty, this time as Chairman of the Board of Gordon Jewlery Corporation, "guarantor" on the lease. The guaranty is dated September 13, 1979.
Additionally, the record shows that the Corporate Tenant's "Acknowledgment for Lease Agreement" and "Acknowledgement for Short Form of Lease" were executed in conjunction with the foregoing documents. These acknowledgments state, in part, *239 "Harry B. Gordon, President of Leonard Krower & Sons, Inc. ... acknowledged ... that he executed the (Lease/Short Form of Lease) as the act of said corporation, for the purposes and consideration therein expressed, and in the capacity therein stated." [emphasis added] Like the guaranty, the Acknowledgments are both dated September 13, 1979, thus pre-dating the lease and the short form of lease.
On February 18, 1987, Leonard Krower assigned its rights in and title to the lease to BCS, Inc. (now United Jewelers & Distributors, Inc., defendant in the principal action). The agreement for assignment was entered into between Sizeler as landlord, Leonard Krower as assignor, BCS, Inc. as assignee, and Gordon as guarantor. The assignment contains the following statements:
WHEREAS, Guarantor agreed to guarantee Assignor's performance of all its obligations under the Lease Agreement,....
. . . . .
Landlord does hereby consent to the assignment herein set forth, provided Assignor and Guarantor continue to remain fully liable for the performance of all obligations under the Lease Agreement.
The assignment twice bears the signature of Daniel P. Gordon, once as Vice-President of Leonard Krower (assignor) and again as President of Gordon Jewelry (guarantor).
The lease provides a fifteen year term, which the record shows commenced September 1, 1981 and expires August 31, 1996. It further provides that the tenant shall pay annual rent of $80,000.00[2] plus 2% of the gross sales over $3,200,000.00 made by the tenant in the premises during that lease year. Other charges provided in the lease and expressly "deemed rent ... subject to all provisions ... as to default in payment of rent" are: common area maintenance costs; insurance premiums; taxes; advertising and promotion; and chilled water (for air-conditioning). Additionally, the lease contains an acceleration clause at Paragraph 4(n) in case of tenant's failure to pay rental or other charges within 20 days after written notice of default.
At Paragraph 4(p), the lease provides that the premises operate only under the name of Leonard Krower and only "for the sale of diamonds, watches, jewelry, giftware, electronics, sporting goods, toys and such other items as are customarily sold in Leonard Krower stores in Louisiana, with the exception of food and non-related clothing."
The lease contains a continuous operation clause (Paragraph 4(q)) which requires the lessee to occupy the premises continuously during the term of the lease and to open the premises during stipulated hours at least six days a week. That section further provides:
Tenant acknowledges that it is a primary consideration of this lease that it open its store on each and every regular business day, during the term of this lease, and observe the stipulated hours of operation each day. Tenant, therefore, agrees that, subject to the provisions of Paragraph 6(1)[3] if it fails to observe these covenants, it shall pay to Landlord, on demand, as liquidated damages of such breach, the sum of $219.18 for each business day it is not open for business ..., reserving to Landlord its other remedies for said breach as set forth in Paragraph 4(n).
The record shows that the lessee failed to open its doors for business on January 25, 1988. By letter dated January 25, 1988, Sizeler notified Leonard Krower, Gordon and BCS, Inc. (now United) of their breach of the obligation to open the store each business day and of Sizeler's intent to assess the stipulated daily penalty of $219.18 per day as well as either accelerating the rent or suing for specific performance in case of lessee's default.
*240 Both parties state in their appellate briefs that rent was paid under the lease until June 10, 1988. The record shows that United, assignee of Leonard Krower's title to and rights in the lease, filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas on June 10, 1988.[4]
Sizeler filed suit against United and Gordon, seeking acceleration of rent and charges owed for the remaining term of the lease, liquidated damages for failure to open the premises for business, specific performance, and a mandatory injunction to enforce the continuous operation clause.
Sizeler then filed a motion for summary judgment against United[5] and for preliminary injunction against both defendants. After a hearing, the trial court rendered judgment on June 13, 1988 granting Sizeler's motion for summary judgment against United in the sum of $1,082,041.95 plus $219.18 per day for each day after April 25, 1988 that the premises remained closed for business. The trial court also granted Sizeler's motion for a preliminary mandatory injunction against both defendants, requiring them to open and operate the business under the terms of the lease. The mandatory preliminary injunction was reversed by this court on appeal.[6]
After Gordon filed its answer, Sizeler filed a motion for partial summary judgment against Gordon, together with supporting affidavits, seeking accelerated rents and charges and stipulated damages. Gordon filed two affidavits in support of its opposition.[7]
On September 22, 1988 the trial court granted Sizeler's motion for partial summary judgment against Gordon in the amount of "$1,082,041.95 plus $219.18 per day for each day after 25 April 1988 that the leased premises ... remain closed for business, plus legal interest...." The court denied Sizeler's motion insofar as it sought sums due beyond rent and penalties for a closed business and specifically denied sums for chilled water and attorney fees in its reasons. Gordon appeals.
GUARANTY
The threshold issue in this case is whether, as a matter of law, Gordon was the guarantor on the lease. Gordon claims the guaranty was "inherently defective and legally unenforceable" because the guaranty pre-dated the underlying obligation.[8] This assignment is without merit.
A contract of guaranty is equivalent to a contract of suretyship, and the two terms may be used interchangeably. McKesson Chemical Co. v. Tideland Chemical Company, Inc., 471 So.2d 812, 814 (La.App. 3d Cir.1985); Boyle v. Fringe Facts, Inc., 414 So.2d 1333, 1338 (La.App. 2d Cir.1982).
LSA-C.C. art. 3035, prior to its amendment in 1987, provided:

Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.
Prior Article 1771 provided, in part:
An accessory contract is made for assuring the performance of a prior contract....
Gordon asserts that under prior articles 3035 and 1771, a contract of guaranty could not exist until after the principal *241 contract arose. In support of its argument, Gordon cites three cases: BNO Leasing Corp. v. Hollins & Hollins, Inc., 448 So.2d 1329 (La.App. 5th Cir.1984), writ denied 450 So.2d 961 (La.1984); Nu-Lite Electrical Wholesalers, Inc. v. Deckard & Treadaway Electric Air Conditioning & Refrigeration, 498 So.2d 120 (La.App. 5th Cir.1986); and Merchants Trust and Savings Bank v. Olano, 512 So.2d 1218 (La. App. 5th Cir.1987). Dicta in all three Fifth Circuit cases, which was apparently based entirely upon the language of prior article 3035, would seem to support Gordon's position. We, however, are not persuaded by this interpretation of Louisiana's suretyship law.
Suretyship has historically been given for future obligations. Hubert, Nature and Essentials of Conventional Suretyship, 13 Tul.L.Rev. 519, 531 (1939). For instance, Louisiana courts have upheld letters of credit, which are necessarily contracts of suretyship on future debts. Id., citing Menard and Vigneaud v. Scudder and Stewart, 7 La.Ann. 385 (1852); Gerson v. Hamilton, 30 La.Ann. 737 (1878); Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267 (1917); Continental Supply Co. v. Tucker-Rose Oil Co., 146 La. 671, 83 So. 892 (1920).
A Louisiana commentary which pre-dates the 1987 revision to the Civil Code also recognized that a contract of suretyship could guarantee future obligations, despite the apparent conflict with the language of prior article 3035.
(T)he reference to one `already bound' serves only to emphasize the accessory nature of the contract, rather than to establish the rules regulating when and under what circumstances suretyship can be established....
The civil law has never experienced any theoretical difficulty in creating security for future obligations.... Despite all of this, support for an interpretation of article 3035 that would preclude suretyship from arising until the debt is formed has been found in the commonly stated proposition that an accessory obligation cannot exist without a principal one. Such an interpretation confuses the question of when a contract can be confected with the questions of when and under what conditions its obligations can be enforced. An accessory obligation obviously cannot be enforced in the absence of a principal obligation (which is what statements concerning the necessity for a principal obligation mean). Nevertheless, there is not, and has never been, any doubt in the civil law that an accessory contract can be made before the principal obligation arises, the creation of the latter being merely a suspensive condition to the enforcement of the former.
Harrell, Developments in the Law, 1985-1986, La.L.Rev. 453, 453-455 (1986).
Furthermore, although the instant case is governed by article 3035 as in effect prior to its amendment, the 1987 revisions to the Civil Code, which deleted in Article 3035 reference to a person "already bound,"[9] clearly indicate that a contract of suretyship could always be made for future obligations in Louisiana. The official revision comment to article 3035 diminished the significance of the amendment, stating in part:
This article reproduces the substance of C.C. Art. 3035 (1870). It clarifies the law by deleting from the source Article the words `already bound.'
LSA-C.C. art. 3035, comment (a) [emphasis added].
LSA-C.C. art. 3036 follows, in part:
The principal obligation may be subject to a term or condition, may be presently existing, or may arise in the future.
The official revision comment to that article states, in part:
The second paragraph of this article [provided ante ] is new. It emphasizes the unqualified nature of the principal obligation and sets at rest speculation that has from time to time been raised as to whether suretyship can *242 be given for future obligations although such contracts have been recognized in Louisiana from the earliest times. [citation omitted] A contract guaranteeing an obligation that is to arise in the future is a contract on a suspensive condition, and in this respect it makes no difference ... whether (the creditor's) arrangement is facultative.
LSA-C.C. art. 3036, comment (b). [emphasis added].
We find the reasoning of Professor Harrell's article and of the official comments to the 1987 revision of the Civil Code persuasive and consistent with the history and purpose of the Louisiana suretyship laws. Therefore, Gordon's argument that the guaranty is unenforceable because the guaranty pre-dates the lease is without merit. See U.S. v. Keeton, 847 F.2d 274 (5th Cir.1988). See also Riverside/Terra Corp. v. K & W Agricultural Services, Inc., 540 So.2d 456, 459 (La.App. 1st Cir. 1989) [Court stated: "The dicta in BNO Leasing ... does not correctly state the law."]
We now consider the issue of whether summary judgment was proper.
SUMMARY JUDGMENT
A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is no genuine issue for trial. LSA-C.C.P. art. 967. Ultimate or conclusory facts or conclusions of law cannot be utilized on a summary judgment motion. Thompson v. South Central Bell Telephone Co., 411 So.2d 26, 28 (La. 1982); Decatur-St. Louis Combined Equity Properties, Inc., Venture v. Abercrombie, 463 So.2d 729, 732 (La.App. 4th Cir. 1985); White v. National Surety Corp., 436 So.2d 751 (La.App. 3d Cir.1983). Any doubt must be resolved against the granting of summary judgment and in favor of trial on the merits to resolve disputed facts. Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981); Decatur-St. Louis Combined Equity Properties, Inc., Venture v. Abercrombie, 463 So.2d at 732. In examining each issue in accordance with these rules, we must determine whether Sizeler would be entitled to summary judgment even if the facts raised by Gordon, if any, were true. See Whitney National Bank v. Palermo, 505 So.2d 95, 97 (La.App. 4th Cir. 1987).
a) Accelerated Rent and Charges
In support of its motion for summary judgment, Sizeler filed numerous affidavits. Significantly, the affidavit of Robert E. Toye, Vice-President and Treasurer of Sizeler, stated that as of April 25, 1988 accelerated rents payable under the lease totaled $666,667.00 ($6,666.67 per month for 100 months); real estate taxes and merchants association charges, $62,500.00 each ($625.00 per month for 100 months); common area maintenance, $156,200.00 ($1,562.00 per month for 100 months); chilled water, $108,156.00 ($1,081.56 per month for 100 months); and insurance, $5,635.21.[10]
Gordon's opposition affidavits, which stated that affiant "diagrees with the amounts sought to be collected by Sizeler from Gordon" and "believes that such amounts are inaccurate," presented only conclusory allegations of fact or law and were devoid of specific facts to support them. Therefore, Gordon's affidavits were properly not considered. See Thompson v. South Central Bell Telephone Co., 411 So.2d at 28; Decatur-St. Louis Combined Equity Properties, Inc., Venture v. Abercrombie, 463 So.2d at 732.
*243 Even absent Gordon's affidavits, however, the record does not support summary judgment on the issues of taxes, merchants association charges, or insurance. Contrary to Toye's affidavit, the lease indicates that $625.00 per month is the minimum contribution for taxes, but not necessarily the total taxes due, and the amount due for advertising and promotion (merchants association) is not a set amount, but is graded according to the number of years into the lease. Although the lease may be determinative of the sum due, the discrepancy in the record precludes summary judgment. Further, the lease does not provide a particular amount due for insurance, and affiant Toye's statement as to the insurance due is a conclusory statement unsupported by sufficient admissible facts. Accordingly, a genuine issue of fact as to each of these items precludes summary judgment on these charges. Therefore, we reverse summary judgment insofar as it grants to plaintiff taxes, advertising and promotion, and insurance.
The record does support summary judgment insofar as it granted monthly rental payments of $666,667.00 and common area maintenance of $156,200.00 from April 25, 1988. Accordingly, we amend the judgment to reflect these amounts and affirm, subject to any amount which may have been paid.
b) Stipulated Damages
A genuine issue of fact also precludes summary judgment on the issue of stipulated damages. Specifically, the lease is ambiguous as to whether the parties intended the stipulated damage clause to apply in case of permanent closure of the premises due to a failed enterprise or only for intermittent, temporary closure of the business.
When the terms of a contract are ambiguous, the agreement shall be construed according to the intent of the parties. Kuswa & Associates, Inc. v. Thibaut Construction Company, Inc., 463 So.2d 1264, 1266 (La.1985), citing LSA-C.C. art. 2045. Intent is an issue of fact to be inferred from all surrounding circumstances. Id., Commercial Bank & Trust Co. v. Bank of Louisiana, 487 So.2d 655, 659 (La.App. 5th Cir.1986). See also Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087, 1089 (La.1981).
Although the continuous operation clause of the lease does not expressly except payment of stipulated damages in case of the lessee's business going defunct, it is written in terms of an existing, ongoing enterprise. Indeed, it hardly seems logical that a guarantor would obligate itself to pay stipulated damages in addition to accelerated rent where the lessee's business closed permanently with so many years left on the lease. The record is devoid of any evidence of customary interpretation given to such clauses. Moreover, the supplemental affidavit of Maurice L. Burk submitted by Sizeler indicates that "(t)he provision was included for the purpose of deterring... temporary closings....," which suggests that the parties contemplated that the guarantor would not be bound where, as here, the lessee's business closed permanently. This ambiguity in the lease presents an issue of fact which precludes summary judgment and necessitates the taking of more evidence on the issue of stipulated damages. Accordingly, we reverse the trial court's judgment insofar as it granted stipulated damages.[11]
c) Attorney Fees and Costs
Sizeler contends that the trial court erred in denying summary judgment on the issue of attorney fees and costs. We disagree.
Although Sizeler submitted extensive time records which attest to the amount incurred, these records did not resolve all factual questions as to precisely which fees and/or costs are due under the terms of the lease. Accordingly, the judgment of the trial court denying these sums was proper.
*244 CONCLUSION
As suretyship has historically been given for future obligations in Louisiana, the guaranty on the lease in the instant case is valid and enforceable despite the fact that the guaranty pre-dates the principal obligation.
Sizeler's supporting affidavits together with the lease support summary judgment on the issue of accelerated monthly rental payments and common area maintenance charges.
However, because the record does not support summary judgment on the issue of taxes, advertising and promotion, and insurance due under the lease, we reverse the trial court's judgment insofar as it grants these items. Accordingly, we amend the judgment to award accelerated monthly rental payments of $666,667.00 plus accelerated common area maintenance charges of $156,200.00, each in accordance with the affidavit of Mr. Toye which was submitted by Sizeler and corroborated by the lease agreement and each subject to credit for any amounts paid, and we affirm as amended.
Further, we reverse the trial court's judgment insofar as it summarily granted to Sizeler stipulated damages under the continuous operation clause of the lease and affirm the denial of summary judgment on the issue of attorney fees and costs.
In accordance with the foregoing reasons, the judgment of the trial court is amended, affirmed in part as amended, and reversed in part.
AMENDED; AFFIRMED IN PART, AS AMENDED; REVERSED IN PART.
NOTES
[1] In its second assignment of error, Gordon argues that the trial court's judgment awarding stipulated damages in addition to preliminary injunction was duplicative since an obligee is not entitled to both performance of the principal obligation and stipulated damages. However, the issue was rendered moot upon this Court's reversal of the preliminary injunction. Sizeler Property Investors, Inc. v. Gordon Jewelry Corp., 544 So.2d 53 (La.App. 4th Cir.1989). Therefore, we do not reach the issue of duplicative relief.
[2] To be paid in twelve installments of $6,666.67.
[3] Paragraph 6(1) provides that failure to perform for "Unavoidable Delay", which includes labor disputes, acts of God, governmental restrictions, civil commotion, and casualty, shall be excused and not be a breach of the lease.
[4] The trial court found that the lease was subsequently rejected by operation of law, 11 U.S.C. § 365, and is no longer under the jurisdiction of the Bankruptcy Court.
[5] Gordon had not yet filed its answer, which is required under LSA-C.C.P. art. 996(A) before a motion for summary judgment against Gordon could be brought.
[6] 544 So.2d 53 (La.App. 4th Cir.1989).
[7] The second affidavit, filed on the date of the hearing, was apparently not considered by the trial court under LSA-C.C.P. art. 966(B).
[8] Though Gordon asserts on appeal that the guaranty was undisputedly executed before the lease, the trial court found in its June 13, 1988 reasons, incorporated by reference into its September 22, 1988 reasons, that the guaranty and the lease "were signed by Krower and Gordon contemporaneously and that the different dates is of no import." Because Gordon did not assign this finding as error, we will not consider the narrow issue of when the documents were actually signed.
[9] Effective Jan. 1, 1988.
[10] As the trial court's judgment granted relief for accelerated rents and penalties, and the lease provides that taxes, advertising and promotion, common area maintenance, chilled water, and insurance are "deemed rent," we must review the judgment as it concerns not only monthly rental payments, but the listed charges as well. However, we do not consider the issue of chilled water since the trial court's judgment expressly denying this cost was not appealed.
[11] Gordon asserted in its third assignment of error that it is not liable for stipulated damages because its failure to perform the principal obligation was justified by valid excuse under LSA-C.C. art. 2008. However, since we reverse the award of stipulated damages on other grounds, we do not reach this issue.