# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 9, 2010

No. 09-31233

Lyle W. Cayce
Clerk

EXPRESS BLOWER, INC;

Plaintiff-Appellant

v.

EARTHCARE, LLC; ET AL,

Defendants-Appellees

Appeal from the United States District Court for
the Western District of Louisiana
USDC No. 3:06-CV-2380

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Express Blower ("Express Blower") appeals the district court's grant of summary judgement in favor of Defendant-Appellee Earthcare ("Earthcare") and two of its officers, rejecting Express Blower's claim for recovery of costs and expenses that it incurred as guarantor of Earthcare's obligations under its lease of equipment from IFC Credit Corporation ("IFC") as lessor. We reverse and render judgment for Express Blower.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-31233

## I.  FACTS & PROCEEDINGS

*A.  Facts*

Express Blower manufactures and distributes pneumatic blowing equipment, some of which is leased to commercial or industrial users.  To assist some lessees, such as Earthcare, obtain the necessary financing, Express Blower entered into an agreement with IFC in July 2002 ("the Agreement"), under which IFC agreed to purchase Express Blower equipment and then lease it to Express Blower's customers, on a deal-by-deal basis.  In the Agreement, Express Blower committed to guarantee each future lessee's obligations to IFC.  To secure its guarantee, Express Blower furnished irrevocable standby letters of credit to IFC.  In a separate "Remarketing and Repurchase Agreement" (the "Repurchase Contract") Express Blower committed to repossess the equipment leased by IFC to third party lessees and to repurchase it from IFC in the event such a lessee should default on its lease.

On September 30, 2002, IFC leased some Express Blower equipment to Earthcare for seventy-two months.  The equipment that Earthcare leased from IFC was valued at $320,419.80.  The lease between Earthcare and IFC ("the Lease") did not reference the Agreement.  The Lease obligated Earthcare to pay IFC $32,041.98 at  commencement and to pay six initial monthly installments of $3,600 each, followed by sixty-six monthly installments of $6,061 each.  This was not a rent-to-own lease: IFC as lessor retained title and would recover possession of the leased equipment at the termination or expiration of the lease.

Earthcare paid rent to IFC from the commencement of the Lease until September 4, 2004, after which date Earthcare paid no further rent to IFC.  Pursuant to the Agreement, Express Blower and its parent companies, Finn and DHG, remitted payments to IFC to cover Earthcare's unpaid rent from that time

2

No. 09-31233

in 2004 until April 2005. Those payments totaled $108,162.92. Then, in April 2005, Express Blower complied with its obligations to IFC under the Repurchase Contract by repossessing the leased equipment from Earthcare, thereby terminating the Lease.[1]

The next month, Express Blower repurchased from IFC the equipment previously leased to Earthcare for $271,457.41, and resold it the next day to Express Landscape (an unrelated entity) for $269,000, thereby suffering a loss of $2,547.41. Express Blower also incurred the following costs and expenses in the course of the remarketing process: (1) sales commission ($5,918), (2) equipment repairs ($8,186.31), (3) rent in connection with demonstration of the equipment ($6,000), (4) payroll ($1,592.77), (5) travel expenses ($2,939.67), and (6) freight charges ($1,240.17), for an aggregate additional cost of $25,876.92 — $28,424.33 when the remarketing loss of $2,547.41 is included; $61,205.27 when interest through July 31, 2006, is included; a total loss of $169,368.19 when that amount is added to Earthcare's unpaid monthly rentals that Express Blower had paid to IFC under the Agreement.[2]

## B.  Proceedings

In December 2006, Express Blower sued Earthcare and two of its officers, Reggie Skains and Ralph Kelly, in district court to recover its aggregate expenditures of $169,368.18 associated with Earthcare's default:  $108,162.92 for reimbursement of unpaid rent and $61,205.27 for costs and expenses associated with repossessing and remarketing the equipment following the April

---

[1] At oral argument, counsel for Earthcare and Express Blower stipulated that the Lease terminated in April 2005, contemporaneously with the repossession of the leased equipment from Earthcare.

[2] Express Blower is also seeking 1.5% interest per month on the past-due payments, in accordance with the express provision of § 17(g) of the Lease.

No. 09-31233

2005 termination of the Lease.  Notably, Express Blower has never asserted claims for rent or any other costs or losses attributable to occurrences after the April 2005 termination of the Lease; it has based all claims on express provisions of the Lease, the Agreement, and the Repurchase Contract in connection with triggering events that occurred before lease termination.  Earthcare denied the existence of a suretyship and asserted that the sale proceeds of the leased equipment fully satisfied Earthcare's delinquencies under the Lease.

Both parties filed motions for summary judgment.  The district court denied the initial motions in January 2009 because the question whether Louisiana or Illinois law should apply remained unresolved.  Both parties again filed motions for summary judgment, this time addressing choice of law.  In December 2009, the district court granted summary judgment in favor of Earthcare, and Express Blower timely filed a notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.  Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3]  We may affirm a grant of summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision.

### B.  Surety

---

[3] FED. R. CIV. P. 56(a) (as amended effective December 1, 2010).

No. 09-31233

The district court declined to determine whether Express Blower was the surety of Earthcare on its obligations to IFC under the Lease, reasoning that Express Blower was subrograted to IFC's rights under the Lease once IFC assigned it to Express Blower. The court observed that Express Blower's rights as a surety would be the same as its subrogation rights under the Agreement.

Louisiana law specifies that suretyship is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[4] A suretyship must be express and in writing.[5] In Louisiana, suretyships may exist in relation not only to loans but to leases as well,[6] and contracts of guaranty are considered equivalent to suretyships.[7]

In our de novo review, we conclude that Express Blower was Earthcare's surety by virtue of the Agreement. Even though the Agreement was a financing arrangement between Express Blower and IFC, it made Express Blower the surety of Earthcare on Earthcare's obligations to IFC under the Lease. The Agreement was a formal, written contract of suretyship. It does not matter that Express Blower entered into the Agreement before Earthcare entered into the Lease or that Express Blower was not a party to the Lease and Earthcare was not a party to the Agreement. A guaranty of the obligations of a lessee — synonymous with suretyship — is valid and legally enforceable, regardless whether the guaranty or suretyship predates the principal obligation.[8]

---

[4] LA. CIV. CODE ANN. art. 3035.

[5] *Id.* art. 3038.

[6] *See Cent. States, Se. and Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 411 (5th Cir. 2000) (noting that one party was a surety on the obligations of a lease).

[7] *McKesson Chem. Co. v. Tideland Chem. Co.,* 471 So.2d 812, 814 (La. Ct. App. 1985); *Boyle v. Fringe Facts, Inc.*, 414 So.2d 1333, 1338 (La. Ct. App. 1982).

[8] LA. CIV. CODE. ANN. art. 3036. *See Sizeler Prop. Investors, Inc. v. Gordon Jewelry Corp.*, 550 So.2d 237, 241 (La. Ct. App. 1989) ("Suretyship has historically been given for future obligations."); *United States v. Keeton*, 847 F.2d 274, 276 (5th Cir. 1988); *But see BNO*

No. 09-31233

Furthermore, letters of credit, such as those provided by Express Blower to secure its obligations to IFC under the Agreement are, by definition, contracts of suretyship on future debts.[9]  The Agreement's provision that committed Express Blower to guarantee the future obligations of IFC's lessees constituted a suretyship that covered Earthcare's responsibilities to IFC under the Lease.

It is within the framework of this three-party, multi-contract arrangement that we analyze the rights of Express Blower and the obligations of Earthcare. When we do so, we conclude that, because a suretyship existed, Express Blower is entitled to recover the expenditures that it made to IFC as the guarantor of Earthcare's rental obligations to IFC and to recover the costs and expenses it incurred in repossessing and remarketing the leased equipment.  We further conclude that Express Blower's recovery of those sums may be effectuated either via reimbursement from Earthcare as its surety or by standing in the shoes of IFC vis-à-vis Earthcare as IFC's subrogee.[10]

## C.  *Express Blower's Rights*

Again, Express Blower's right of reimbursement for payment of the obligations of its principal, Earthcare, flows from its role of surety for the performance of Earthcare's obligations to IFC under the Lease. Express Blower cannot, however, claim or recover more from Earthcare than could have IFC. And, as we shall demonstrate, Express Blower's claims and ultimate recovery against Earthcare are identical to those that IFC was entitled to assert and recover.

---

*Leasing Corp. v. Hollins & Hollins, Inc.,* 448 So.2d 1329, 1335 (La. Ct. App. 1984). (suggesting otherwise, but based on an older version of LA. CIV. CODE. ANN. art. 3035).

[9] *Sizeler*, 550 So.2d at 241.

[10] A surety "has the right of subrogation, the right of reimbursement, and the right to require security from the principal obligor." LA. CIV. CODE ANN. art. 3047.

No. 09-31233

Express Blower takes the position that the termination of the Lease in April 2005, as acknowledged by the parties, was occasioned by the exercise of one of the lessor's optional remedies specified in §17 of the Lease — specifically, option (a) — and that none of the other optional remedies are being exercised thereunder, particularly not option (e), which by its terms would be applicable only if the Lease had not been terminated but had been allowed to continue for its term.   Section 17 begins by stating: "Upon default . . . Lessor in its sole discretion shall elect . . ." The first option is (a), which allows IFC as lessor "to terminate or cancel this Lease and Lessee's rights hereunder . . . ."   Thereafter, options (c), (d), and (e) — the last being the one that Earthcare misleadingly and incorrectly insists was elected by Express Blower — are all conditioned on the continuation of the Lease ("without terminating the Lease"); they are clearly inapplicable here.

Then, following the list of all optional remedies that are available to the lessor "[u]pon default," §17 states:

> In addition to all other charges hereunder, Lessee shall pay to Lessor on demand all fees, costs and expenses incurred by Lessor as a result of such default, including without limitation, reasonable attorneys', appraisers', and brokers' fees and expenses and costs of removal, storage, transportation, insurance and disposition of the Equipment . . . .

First, as a suretyship did exist, Express Blower is entitled to reimbursement of the funds that it paid IFC to cover Earthcare's past-due rent, albeit only up to the time the Lease was terminated and the leased movables were repossessed.  As noted, this totaled $108,162.92.

Next, under the plain wording of the additional-charges provision of §17 quoted above, Express Blower is entitled to reimbursement of the identified costs and expenses that it incurred in repossessing and remarketing the equipment, as well as interest on overdue payments.  There can be no question but that the

7

costs and expenses incurred by Express Blower during the course of repossessing and remarketing the leased equipment following the termination of Lease — commission, repair, rental costs, payroll, travel costs, and freight charges — come within the ambit of the above-quoted additional remedy. It is equally unquestionable that all those costs and expenses are attributable to Earthcare's breaches and violations that occurred while the Lease was in effect, i.e., prior to its termination in April 2005. Inasmuch as the filings of the parties in their opposing motions for summary judgment establish that there are no genuine issues of material fact in play here, and inasmuch as the costs and expenses incurred by Express Blower in repossessing and reselling the equipment theretofore leased to Earthcare are documented and uncontested, the quantum of the costs and expenses for which Express Blower seeks reimbursement, in addition to rentals unpaid up to the date of lease termination, is established.

The point at which this case jumped the track in the district court was when Earthcare argued (and apparently convinced the district court) that the remedies sought against Earthcare were not those authorized by option (a) under §17 — termination or cancellation of the Lease and the lessee's resulting rights — but those authorized by option (e), which purports to give the lessor the cumulative option of both continuing the Lease in effect for its entire remaining term *and* repossessing and selling any or all of the leased equipment. But, when the record on appeal is reviewed in its entirety, including (1) the concession by both parties that the Lease was terminated in April 2005 and (2) the undisputed fact that the sums sought by Express Blower are for breaches or defaults of Earthcare that occurred prior to the termination of the Lease, it is obvious that the provisions of §17(e) were never in play. Rather, everything sought from Earthcare by Express Blower as Earthcare's surety or IFC's assignee and subrogee arises from the period between Earthcare's cessation of paying rent in September 2004 and termination of the Lease in the spring of 2005.

No. 09-31233

Misled by Earthcare's red herring in referring to §17's option (e) as the remedy selected by Express Blower (which it was not), the district court understandably ruled that §17's option (e), in combination with lease termination under option (a), was contrary to Louisiana law because that would allow the lessor both to recover accelerated rental payments for the entire lease term *and* to repossess the leased property and recover damages while the Lease continued to run its course.[11] The court therefore struck the first clause of option (e) as contrary to public policy, leaving only the obligation of Express Blower to apply any net proceeds of the sale of the repossessed equipment towards the amount Earthcare owed in rent. The district court's induced error in striking down that part of the Lease as contrary to public policy embodied in the Louisiana Lease of Moveables Act becomes clear with the realization that neither Express Blower nor IFC have ever attempted to recover any *future* lease payments for that part of the Lease's term that would have followed the April 2005 lease termination and the repossession of the leased equipment. Indeed, Express Blower has never sought to recover anything but pre-termination rent and the actual costs and expenses it incurred as a result of Earthcare's default,

---

[11] The Louisiana Lease of Moveables Act requires that a lessor:

  (a). . . [M]ay file an appropriate collection action against the lessee to recover accelerated rental payments and additional amounts that are then due and outstanding and that will become due in the future over the full base term of the lease . . . (b) He may cancel the lease, recover possession of the lease property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement.

LA. REV. STAT. ANN. § 9:3318.  *See also, Gen. Elect. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 953 (5th Cir. 1991) ("[T]he lessor must elect either to sue for collection of past due rent and accelerated future rental payments under the lease, or to cancel the lease, recover possession of the leased property, and collect past due rent and charges.").

which is permitted under the express terms of the Lease, the suretyship, and Louisiana law.[12]

When viewed in context, Earthcare's proffered interpretation of §17 of the Lease, *viz.,* that the lessee is entitled to have the proceeds of the sale of the equipment applied against pre-termination past-due rent and liquidated costs is commercially and legally illogical to the point of absurdity. We do not interpret contracts in a vacuum, but rather in a context that makes sense.[13] The Lease was not a "rent to own" contract: Even if Earthcare had fulfilled its obligations under the Lease throughout its full six-year term, it still would never have obtained title to the equipment. As Earthcare never had, and never would have, an ownership interest in the equipment, it would make no sense for Earthcare to benefit from the proceeds of the sale of such moveables as the result of its breach which produced the termination of the Lease.

Given that the Lease was terminated in April 2005 when Express Blower repossessed the equipment from Earthcare, the portions of the remedies section of the Lease, §17 that specify the optional remedies of the lessor *while the Lease continued* were no longer applicable. As the sale of the equipment occurred after the Lease was terminated, those optional remedies simply could not apply to post-termination sales. At all times, the equipment had remained the property of the lessor — initially IFC and then Express Blower following its repurchase of that equipment from IFC post-termination. There is no realistic interpretation of the Lease that would allow Earthcare to receive any credit from

---

[12] LA. REV. STAT. ANN. § 9:3318(b) and 3325 (permitting the lessor to collect "amounts then due and owing under the lease as well as such liquidated damages as may be provided under the lease agreement").

[13] *See Makofsky v. Cunningham*, 576 F.2d 1223, 1229 (5th Cir. 1978) ("Louisiana courts will not interpret the words of a contract literally when this leads to unreasonable consequences or inequitable or absurd results even when the words used in the contract are fairly explicit.").

No. 09-31233

the sales of the equipment (1) from IFC to Express Blower or (2) from Express Blower to Express Landscape.[14]

The plain language of the Lease assesses responsibility for the cost of repossessing and reselling the equipment to the lessee, Earthcare. As such, Earthcare is responsible for reimbursing Express Blower for these costs (in addition to the past-due rentals for the period between September 2004 and April 2005). These costs, which total $61,205.27, are:

| | |
|---|---|
| Net loss on repurchase and resale of the equipment | $2,547.41 |
| Equipment repair expenses incurred by Express Blower before receiving assignment of Lease from IFC | $8,186.31 |
| Commission Expense incurred by Express Blower in resale of equipment to Express Landscape | $5,918.00 |
| Rental costs incurred by Express Blower in reselling the equipment to Express Landscape | $6,000.00 |
| Payroll costs incurred by Express Blower in seizing the equipment from Earthcare | $1,592.77 |
| Travel expenses incurred by Express Blower in repossessing the equipment from Earthcare | $2,939.67 |

---

[14] Not to be confused with the net loss on the repurchase and resale of the equipment, a cost for which Earthcare is required to reimburse Express Blower.

11

No. 09-31233

| | |
|---|---|
| Freight charges incurred by Express Blower for transporting of the equipment | $1,240.17 |
| Interest on rent deficiency, costs, and expenses, from April 1, 2005 to July 31, 2006 (at the rate of 1.5% per month, as specified in §17 of the Lease) | $32,780.94 |
| Total | $61,205.27 |

## III.  CONCLUSION

Because a suretyship existed between Express Blower as surety and Earthcare as principal obligor under the Lease from IFC, Express Blower is entitled to reimbursement from Earthcare for (1) the rental payments on the leased equipment that it made to IFC between Earthcare's default and the termination of the Lease, and (2) the additional costs and expenses incurred by Express Blower in repossessing and reselling the leased equipment.   We therefore reverse the district court's grant of summary judgment against Express Blower and render judgment in its favor against Earthcare for $169,368.19 plus interest at the rate of 1.5% per month on the unpaid principal amount thereof until paid in full.[15]

REVERSED and RENDERED.

_____

[15] Express Blower will not receive 1.5% on the interest already included in the principal sum of the judgment ($32,780.94).  Instead, it will receive interest accruing on that principal amount from July 31, 2006 until paid.