279 So.2d 169 (1973)
EXECUTIVE CAR LEASING COMPANY OF NEW ORLEANS, INC., Plaintiff-Appellee-Respondent,
v.
ALODEX CORPORATION, Defendant-Appellant-Relator.
No. 52721.
Supreme Court of Louisiana.
June 11, 1973.
Nathan Greenberg, Greenberg, Cohen & Dallam, Gretna, for defendant-appellant-relator.
*170 Fred P. Westenberger, New Orleans, for plaintiff-appellee-respondent.
TATE, Justice.
The plaintiff-lessor ("Executive") leased a 1969 Ford automobile to the defendant-lessee ("Alodex"). After five months' use, by mutual agreement the lease was cancelled. Executive here sues to obtain the unpaid monthly rentals, as well as additional compensation due under the terms of the lease. Alodex resists payment of the additional compensation, claiming that the collection of such compensation in addition to the monthly rentals is violative of the law and public policy of Louisiana.
The court of appeal essentially affirmed the judgment of the trial court in favor of Executive, the plaintiff-lessor, and rejected the contentions of Alodex, the defendant-lessee. 265 So.2d 288 (La.App. 4th Cir. 1972). We granted certiorari, 262 La. 1129, 266 So.2d 433 (1972), in order to resolve a conflict in decision between the circuits, as will be set forth.

The "termination value adjustment" agreement
Executive leased Alodex the 1969 Ford at a monthly rental of $116.50. The lease was for an indefinite period. However, the lease provided for an adjustment in the compensation to be computed at the time the lease was terminated. The legality of this "termination value adjustment" is at issue.
The lease provides that, when it will be terminated, the wholesale value of the leased vehicle should be ascertained as provided by the agreement.[1] If at termination this wholesale value is less than the depreciated value of the vehicle, i. e., due to its leased use (computed under the lease as an original value of $3,067 less $81.29 for depreciation each month), then the lessee Alodex agreed to pay the difference as "additional rental".[2] (If, on the other
*171 hand, the wholesale value at termination is greater than the depreciated value of the vehicle, then the lessor Executive agrees to refund the excess value as a credit against the monthly rental paid.)
The general intent of the termination value adjustment provisions is to assure that the lessor collects the loss in value of the rental vehicle to the extent it exceeds the depreciation included in the monthly rentals collected. On the other hand, if at the termination of the lease the wholesale value of the vehicle exceeds its loss in value due to depreciation during use under the lease, then the lessee-user is entitled to a refund to that extent.
In effect, at the termination of the lease, the monthly rental is adjusted up or down. The lessee-user either pays for any loss in value greater than the estimated depreciation over the lease-months, or else he receives credit against the monthly rentals paid to the extent that the actual loss in value is less than the estimated depreciation over such period.
In the present instance the court of appeal awarded judgment to Executive for $905.55 for the termination value adjustment agreed upon, since the wholesale value was less than the estimated depreciated value. (This award was in addition to the unpaid rental of $582.50 for the five months' use of the leased vehicle and to $207.97 for penalty payment (see footnote 2 above) for the cancellation of the lease in less than a year.) The defendant-lessee Alodex attacks this award as contrary to the law and public policy of this state.

The issue
In Clay-Dutton, Inc. v. Coleman, 219 So. 2d 307 (La.App. 1st Cir. 1969), the Court of Appeal, First Circuit held that the termination value adjustment agreement was unenforceable under Louisiana law. It did so on two grounds:
(a) The creditor's collection of the loss in value of the leased instrument through a private, rather than a judicial, sale was held to violate the law and public policy represented by our Deficiency Judgment Act, La.R.S. 13:4106,4107; and
(b) The collection of such valuation adjustment, in addition to the monthly rentals for the actual months of the lease, was held to be an attempt to collect future rentals for the unexpired term of the lease, even though the lease was terminated and possession of the property returned to the lessorand thus contrary to the jurisprudential principles recognized by such decisions as 327 Bourbon Street, Inc. v. Pepe, Incorporated, 257 La. 577, 243 So.2d 262 (1971) and Henry Rose Mercantile & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429 (1923).
In its decision in the instant case, the Court of Appeal, Fourth Circuit, disagreed, for the reasons to be stated, and again reiterated its holdings in Clay-Dutton, Inc. v. Plantation Nursing Home, 239 So.2d 442 (La.App. 4th Cir. 1970), a decision which likewise recognized the conflict in legal holdings as between the First and Fourth Circuits.
Certiorari was granted to resolve this conflict.

The resolution of the conflict
Although the issue is not entirely free from doubt, we have concluded that *172 we agree with the Fourth Circuit's decision of the issues.
With regard to (a) above, the deficiency judgment issue:
The lease agreement in question confers no right of ownership onto the lessee. It is not, for instance, a lease-purchase agreement, by which the lessee obtains the absolute right to purchase or to receive title to the vehicle, so that the monthly rentals can also be regarded as payments on a purchase price. The leased vehicle remained at all times the property of the lessor, with the lessee having no right of ownership of it, or no right to obtain ownership of it.
The Deficiency Judgment Act, La.R.S. 13:4106, 4107, thus does not apply. The act is designed to protect against a creditor's non-judicial sale of a debtor's property.[3] It does not apply here, where additional rental compensation is determined by the fictitious sale of the creditor's property to determine any additional loss in value during the debtor's use of it.
With regard to (b) above, the future rentals issue:
The termination value adjustment was part of the rental consideration for the use of the vehicle during the months it was leased. At the inception of the lease, the lessee agreed to be responsible for such amount when the lease was terminated. As formulated by the contract, the adjustment in rent was reasonably calculated to compensate the lessor for a loss in depreciated value over the months in use in excess of that mutually agreed upon as reasonable at the time of the lease.
Such adjustment value agreement was thus not an attempt to collect future rentals beyond the termination of the lease. Under the circumstances, it cannot be invalidated on such account.
We are not faced with a situation where, at the inception of the lease, the stated value of the automobile or the monthly depreciation in value are so overstated or understated, respectively, as to enable us to conclude that what is denoted as a lease agreement in fact contemplates a buyer-seller or lender-borrower relationship or one in which future rentals may be collected in the guise of additional compensation for the use of the vehicle during the lease-months.
Conclusion
Other factual issues have been correctly decided by the trial court.
For the reasons assigned, the judgment of the court of appeal is affirmed. The defendant is to pay all costs.
Affirmed.
MARCUS, J., recused.
NOTES
[1] Clause 4e of the lease provides:

"When Lessee surrenders said vehicle to Lessor, at the expiration or termination of this lease, or otherwise, or upon Lessor obtaining possession of said vehicle after Lessee's default, Lessor shall, as soon thereafter as practicable, obtain two (2) written offers to purchase said vehicle from wholesale automobile dealers. Lessor shall then notify Lessee of the amount of said offers by mailing such notice to Lessee at the address stated above, or such other address as Lessee may have notified Lessor in writing, or by any other method deemed by Lessor to give actual notice to Lessee. Within ten (10) days from date of said written notice, or within ten (10) days from the date of actual notice in the event said notice is not written, Lessee shall have the right to obtain for and on behalf of Lessor, an offer to purchase said vehicle. Unless Lessee obtains and submits to Lessor an offer to purchase so obtained by him, and said sale consummated within the ten (10) days indicated above, the highest offer to purchase received by Lessor from said wholesale dealer shall be binding as the appraised wholesale value. In the event Lessee obtains an offer to purchase said vehicle at a price which exceeds Lessor's highest offer, then said offer by Lessee shall constitute the appraised wholesale value. If the appraised wholesale value exceeds the depreciated value of said vehicle, Lessor shall credit the excess to Lessee as a refund of a portion of the rental theretofor paid by Lessee; however, if the depreciated value of said vehicle exceeds the appraised wholesale value, then, in such event, Lessee shall forthwith pay Lessor an amount equal to the excess as additional rental."
[2] Another clause provided for the additional payment if the vehicle was returned and the lease cancelled by the lessee in less than a year. Included in Clause 2 is the agreement:

"* * * in the event that such date [of termination] is less than one year from the date the lease began then Lessee shall pay to Lessor for each month remaining in the first year of said term a sum equal to the difference between the specified fixed rental and the monthly depreciation reserve."
Under such additional agreement, the lessee Alodex is liable, not only for the $116.50 rental for the five months of use, but also for a penalty of $29.71 for each of the remaining seven months of the year the difference between the rental due ($116.50, less $5.50 for tax, net $111.00) and the depreciation ($81.29) fixed for each month's use of the vehicle. The intermediate court held that these were liquidated damages for the surrender of the vehicle before the expiration of the year, as provided for by the lease, and that they were properly recoverable as such under Civil Code Article 1934(5). (The evidence reveals that a new car loses about 40% of its market value during its first year.) This holding correctly rejects the argument that such penalty is not recoverable as being really damages for delay in the payment of money, Civil Code Article 1935, and thus limited to interest.
[3] La.R.S. 13:4106 pertinently provides: "If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph. * * *" (Italics ours.)