BEER, Judge.
This suit arises from a lease agreement controversy involving a Ford Ranchero Pickup Truck rented from plaintiff-appel-lee, Executive Car Leasing Company of N. O. by defendant-appellant, Lawrence Federico, Jr. The lease was executed June 8, 1971 and the stipulated monthly “rental” [1] of $91.04 was paid until May of 1973. In October of 1973 plaintiff-appellee instituted this suit and shortly thereafter (November) defendant-appellant returned the truck. Appellee sought monthly rentals due from May to November 1973 plus interest and attorney’s fees and also “late charges” of $1.00 per day. The trial court rendered judgment for plaintiff in the amount of $726.24 ($91.04 for 6 months plus $180.00 in late charges) and attorney’s fees in the amount of $182.06. We affirm.
Appellant’s argument for avoiding liability is primarily based upon the contention that he tendered a return of the vehi *383 cle early in June, 1973. The trial court found that no valid tender had been made. Since defendant kept the truck and used it until November, he was responsible for rental during that period.
Appellant further contends that the “termination value adjustment” clause in the lease which required lessor to obtain written purchase offers from auto wholesalers at the termination of the lease period was not followed. This contract provision has been interpreted by the Louisiana Supreme Court in Executive Car Leas. Co. of N. Orl., Inc. v. Alodex Corp., 279 So.2d 169, 171 (1973) wherein Justice Tate stated:
“The general intent of the termination value adjustment provisions is to assure that the lessor collects the loss in value of the rental vehicle to the extent it exceeds the depreciation included in the monthly rentals collected. On the other hand, if at the termination of the lease the wholesale value of the vehicle exceeds its loss in value due to depreciation during use under the lease, then the lessee-user is entitled to a refund to that extent.
“In effect, at the termination of the lease, the monthly rental is adjusted up or down. The lessee-user either pays for any loss in value greater than the estimated depreciation over the lease-months, or else he receives credit against the monthly rentals paid to the extent that the actual loss in value is less than the estimated depreciation over such period.”
However, the appellee has failed in its proof- of damages as a result of the application of this provision of the lease agreement and the appellant has forfeited its right to proceed under its terms.[2]
The contract also specified a “late charge” of $1.00 per day “in the event any payment due hereunder shall not be paid within (10) days of its due date.” The trial court correctly found payment was 180 days late and awarded $180.00 in late charges. Finally, the award of attorney’s fees was justified by an enforceable provision of the contract.
Judgment of the trial court is affirmed, appellant to pay all costs.
Affirmed.

. Actually, the monthly figure included depreciation and other overhead costs.

. Although the agreement provides for certain appraisal procedures to be followed in making the termination value adjustment even in the event of default, the wording of the “Defaults” provisions of the agreement effectively obviate the appellant’s right to take advantage of the termination value adjustment.