469 So.2d 325 (1985)
AMERICAN LEASING COMPANY OF MONROE, INC., Plaintiff-Appellee,
v.
LANNON E. MILLER & SON, GENERAL CONTRACTING, INC. and Lannon E. Miller, Defendants-Appellants.
No. 16910-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*326 Joseph D. Toups, Jr., Mansfield, for defendants-appellants.
Boles & Mounger by Steven G. Williams, Monroe, for plaintiff-appellee.
Before HALL, MARVIN, and NORRIS, JJ.
MARVIN, Judge.
The corporate lessee and its personal guarantor appeal a judgment against them for $14,750 and for $500 attorney fees. The $14,750 is the difference between past and future rentals due under a 36 month lease of a tractor ($34,750) and the amount the tractor was sold for ($20,000) by the lessor eight months after the lessee surrendered it to lessor.
*327 The critical issue is whether the Lease of Movables Act (LRS 9:3261-3272) changes the case law interpreting the lease provisions of the Civil Code to allow a lessor to terminate the lease, even with legal justification, and recover future rentals for the remaining term of the lease. See and compare McCowan & Powers, "The Law of Movable LeasesA Void Being Filled," 23 La.Bar Journal 123 (Dec.1980); Willenzik, "Personal Property Leases in Louisiana," 44 La.L.Rev. 755, 760 (1984).[1]
We do not interpret the Lease of Movables Act (LMA) to authorize the result pronounced by the trial court and we reverse and remand. La. CC Arts. 1995, 2005-6, 2009. Ouachita Equipment Rental v. Baker Brush Co., and Ouachita Equipment Rental Co. v. Simons, cited in footnote one.

FACTS
On April 9, 1981, the defendant corporation leased a tractor and three accessories from plaintiff for 36 months for a monthly rental of $2,044. Lannon E. Miller, also a defendant, personally guaranteed his corporation's performance of the lease. Miller made 19 monthly rental payments, the last on November 3, 1982, and declared to plaintiff that he was unable to further fulfill his obligation under the written lease.
Plaintiff's employee, Sandifer, instructed Miller to return the tractor and accessories to Gilchrist Machinery in Bossier City, who had sold the tractor to plaintiff to lease to defendant. Miller complied with Sandifer's instruction in November or December 1982 when $34,750 in future rentals was owed.
After making written demand for this amount on Miller in August 1983, the lessor sold the tractor to Gilchrist for $20,000. The trial court found the lease not to have been disguised as a sale, rendering the Deficiency Judgment Law inapplicable whether the tractor was sold at public or at private sale, and with or without appraisal. LRS 13:4106-7. See also Ouachita Equipment Rental v. Baker Brush Co., and Executive Car Leasing Co. v. Alodex Corp., cited supra in footnote 1.
The trial court enforced this language of the lease against the lessee:
LESSEE'S DEFAULT: The following events shall constitute defaults on the part of the Lessee ... the failure of the Lessee to pay any installments of rental within five (5) days after the date on which the same shall become due;
... Upon the occurrence of any such default, the Lessor may, at its option and without notice in writing to Lessee terminate this Lease as to all or any items of the Equipment, and/or (c) declare the entire amount of the unpaid total rental for the balance of the term of this Lease immediately due and payable, whereupon Lessee shall become obligated to pay to Lessor forthwith, the total amount of the unpaid rental for the balance of the lease term plus damages, if any, and shall additionally be liable to Lessor as herein provided.

Any specification herein of Lessor's remedies shall not be deemed to be exclusive, but shall be in addition to all other remedies in its favor, howsoever existing, and shall be cumulative. In the event of termination, Lessee shall be liable for the return of all Equipment to Lessor ... In the event of any default as provided hereinbefore, Lessee shall be liable for and shall pay to Lessor all expenses incurred by Lessor in connection with the enforcement of any of Lessor's remedies, including reasonable attorney's fees and all expenses of repossession, storing, shipping, repairing, and selling the *328 Equipment.... Paragraphed for clarity; Emphasis supplied.

THE LAW
The cases cited in footnote one established and have since maintained these principles under the lease articles of the Civil Code:
When the lessor seeks to regain possession of the leased property following the lessee's default, the lessor forfeits any rights to future rental payments under the lease. When the lessor recovers possession of the leased property, the lessee is denied the continued peaceable possession of the leased equipment mandated by the public policy provisions of Civil Code article 2692(3), and the lessee's obligation to pay future rentals automatically terminates. Conversely, when the lessor elects to file suit against the lessee for accelerated future rentals, the lessor must be prepared to permit the lessee to continue in peaceable possession of the leased property over the remaining lease term. As a matter of public policy, this absolute right may not be waived or contractually abrogated under the lease agreement. 44 La.L.Rev. 755, 758-759, footnotes omitted.
The LMA, adopted by Act 114 of 1974, has been considered by some as allowing the result pronounced here. 23 La.Bar Journal 123, cited supra. Others have disagreed. 44 La.L.Rev. 775, cited supra.
LRS 9:3261 reads:
In the event of default by the lessee, the lessor of movable property has the option to enforce judicially all of his rights under the lease contract, including, if the lease so provides, his right to accelerate all rentals that will become due in the future for the full base term of the lease, or to cancel the lease and to exercise the rights granted him under this chapter. Emphasis supplied.
The use of the disjunctive, "enforce judicially... under the lease ... accelerate[d] rentals ... or to cancel the lease and ... [proceed] under this chapter," does not abrogate, in our opinion, the Civil Code lease principles or the case law interpreting those principles.
Act 114 of 1974 simply added a new Chapter 2 [Lease of Movables] to Code Title IX [Of Lease] of Code Book III of Title 9 of the Revised Statutes. It was added "to provide protection of the rights of lessors of movable property" by giving them the option that is provided in § 3261, quoted above, to enforce judicially the right to future rentals or to cancel the lease and seek damages, either under the lease or under § 3267. Nothing in the 11 sections of the law suggests to us that a lessor may cancel the lease, dispossess the lease, and recover all future rentals or that the law was intended to abrogate other laws on the same subject matter.
We construe Code Title IX [Of Lease] together with, and not in conflict with, its ancillary sections in LRS 9:3261-3272. CC Art. 17.
LRS 9:3266 allows the lessor to "enforce judicially, in an ordinary proceeding to cancel the lease, all of the rights under the lease contract to which he is entitled as a result of cancellation." Emphasis supplied. Section 3267 states that the court may award liquidated damages to the lessor if the lease stipulates such damages and if the court finds the stipulated amount to be reasonable. If the lease does not contain such a stipulation, the court may award [reasonable] damages to the lessor. CC Art. 2005 also permits parties to a lease to stipulate damages in the event of a default. Comment (b) to this article explains that the court must deem the stipulated damages to be a true approximation of actual damages before giving effect to the stipulated damages clause.
CC Art. 1995 generally sets forth how damages are to be measured, that is, "by the loss sustained by the obligee and the profit of which he has been deprived."
A stipulated damage clause should reasonably approximate the lessor's loss and profits and should not be penal. CC Art. 2009 indicates that proof of actual *329 damages is not a pre-requisite to recovery. When a stipulated damages provision is enforced, the court must determine the reasonableness of the amount by inquiring whether the parties, by the clause, truly attempted to reasonably approximate actual damages. Stipulated damages may exceed, to some degree found reasonable by the court, actual damages.
The quoted language of the clause which allows the lessor to terminate the lease to Miller and then accelerate and collect the balance of the rent "plus damages," in our opinion is obviously not a stipulated damage clause under LRS 9:3267 or under CC Art. 2005.
Even should we assume that the quoted language was intended as a stipulated damage clause we cannot uphold and enforce it. This clause requires full payment of the balance of the [future] rent whether default occurs in the first month or the last month of the lease.[2] While it is remotely possible that situations may exist where future rentals might be 100 percent profit, the result pronounced by the trial court here is contrary to public policy. CC Art. 2012. See Ouachita Equipment Rental v. Baker Brush Co., and Ouachita Equipment Rental Co. v. Simons, cited supra, wherein stipulated damages clauses, which used future rentals as one component in the calculation of damages, were found unreasonable and were not fully enforced.
The unenforceability or nullity of the "stipulated damages clause does not render the principal obligation null." Par. 2, CC Art. 2006. As Professor Hersbergen has noted, "the invalidity of the penal clause ["stipulated damages clause" under the terminology of the recent revision of the conventional obligations articles of the civil code] does not prevent the aggrieved party from proving his actual damages." 43 La.L.Rev. 1315 at 1417, (1983). Accordingly, we shall remand to allow the lessor an opportunity to prove the actual damages it sustained because of the lessee's default.

CONCLUSION, DECREE
In summary, we hold that the LMA does not allow a lessor to recover all future rentals after cancellation of a lease because of the lessee's default and after the lessee is dispossessed, but recovery of only such damages as are found reasonable by the court, whether or not those damages are stipulated. LRS 9:3267. CC Arts. 1995, 2005, et seq. We do not decide under this record whether the principal judgment of $14,750 is reasonable or unreasonable. That determination can only be made by the trial court on additional evidence.
The judgment appealed is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to each litigant.
REVERSED AND REMANDED.
NOTES
[1] The leading case is Henry Rose Mercantile & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429 (La.1923). Its progeny includes Bordelon Leasing, Inc. v. Thibodeaux Air Conditioning Sales, 386 So.2d 120 (La.App. 3d Cir.1980); Mid-Continent Refrig. Co. v. Williams, 285 So.2d 247 (La. App. 3d Cir.1973), writ denied; Executive Car Leasing Co. v. Alodex Corp., 265 So.2d 288 (La. App. 4th Cir.1972), affd. 279 So.2d 169 (La. 1973). See also Ouachita Equipment Rental v. Baker Brush Co., 388 So.2d 477 (La.App. 2d Cir.1980), and Ouachita Equipment Rental Co. v. Simons, 443 So.2d 762 (La.App. 3d Cir.1983).
[2] Even though plaintiff here sued for the difference between the balance of future rental payments and the proceeds from the sale of the equipment, the quoted language does not require such a credit, but obligates the lessee for all future rentals.