CIACCIO, Judge.
Plaintiff filed suit for damages under a lease contract with defendant. The trial court rendered judgment in favor of plaintiff and defendant now appeals. We affirm.
PACTS
On November 15, 1984, plaintiff, Cenval Leasing Corporation (“Cenval”) leased by written contract to defendant, Dr. Charles Nunnery a 1985 Datsun 300 ZX for a term of sixty months at a monthly rental of $429.68. This vehicle had been purchased for Nunnery by American Medi-Lease for over $21,000 and subsequently sold to Cen-val to confect this lease.
The contract of lease between the parties provided that the lessee had an option to purchase the vehicle at any time during the lease by paying certain fees and the balance due under the lease. The contract also provided that the lessee could terminate the lease, but would be responsible for a disposition charge of $250.00 and the difference between the Adjusted Lease Balance on the vehicle and the Realized Value of the vehicle when it is sold. According to the lease, the Realized Value would be determined by the highest of three cash bids received by the lessor, unless otherwise agreed by the parties within ten days from the termination of the lease.
Nunnery’s last monthly rental payment on this vehicle was received by Cenval on July 27, 1987. On August 4, 1987, Nunnery was unable to start the vehicle and had it towed to Diamond Datsun for repair. Diamond Datsun subsequently informed Nunnery that the control unit needed to be replaced, and Nunnery approved these repairs totalling approximately $870.00. Once the control unit was installed, Diamond Datsun determined the vehicle was in need of additional repairs amounting to over $3,000.00. Nunnery refused to consent to these additional repairs to the vehicle.
On August 15, 1987, Nunnery notified Cenval in writing of his intentions to terminate the lease contract. Cenval subsequently took possession of the vehicle in September, 1987 by remitting a check in the amount of $870.45 for the initial repairs on the vehicle. However, the vehicle was still not in running condition, and Cenval made arrangements pursuant to the lease agreement to have the vehicle sold. The vehicle was transported to Houston, Texas, the location of Cenval’s central office. Cenval then submitted the car “as is” for cash bids. After receiving three bids, Cen-val sold the vehicle for $4,500 which was the highest bid received. Testimony by the Cenval representative indicated that the car was in very poor condition and was not able to be operated at the time of the sale.
Following the sale of this vehicle Cenval instituted this suit against Nunnery for the remaining amount due pursuant to the lease agreement. Defendant answered this petition admitting that he had entered into this lease agreement, but denying all other allegations of the petition. Defendant further alleged that the damag.es claimed by plaintiff are erroneous and unreasonable.
By stipulation of the parties, this matter was tried before Commissioner John M. Holahan on April 18, 1989. On June 2, 1989, the commissioner filed a report in the district court recommending that Cenval’s suit for damages be dismissed. Cenval subsequently filed objections to this report, and on November 28, 1989 the trial court rendered judgment rejecting the Commissioner’s report and awarding Cenval the full amount claimed in its petition. It is from this judgment that defendant now appeals.

Assignment No. 1

Appellant first argues that the trial court erred in finding that the Louisiana Lease of Movables Act replaces the Deficiency Judgment Act with regard to the lease of movables. Nunnery contends that as he had an ownership interest conferred by his option to purchase the vehicle, the Deficiency Judgment Act applies, barring plaintiff from recovering additional damages since the vehicle was sold without the benefit of appraisal. We disagree.
*1044 The Louisiana Lease of Movables Act, La.R.S. 9:3301 et seq. was enacted by Acts 1985, No. 592, and applies to all leases of movable property located in this state, whether the property is initially leased in Louisiana or subsequently moved into this State. La.R.S. 9:3303(A). Section 7 of the Act No. 592 provides that this statute is remedial in nature and shall apply to leases of movables in existence as of the effective date of the Act, July 13, 1985.
The lease of the vehicle by appellant in this case is clearly a lease of a movable as contemplated by this statute. The lease was executed in Louisiana and the vehicle was located in this state during the term of the lease. Although the lease was executed prior to the effective date of this statute, the Louisiana Lease of Movables Act nevertheless applies to this lease as the statute is remedial in nature.
The Louisiana Lease of Movables Act makes no requirement that the lessor obtain an appraisal of the leased property prior to the sale of the property on the lessee’s default on the lease. The appellant, however, contends, that an appraisal of the vehicle is required under the provisions of the Deficiency Judgment Act and that Cenval’s failure to obtain an appraisal precludes its recovery of any additional damages against the lessee. The Deficiency Judgment Act, La.R.S. 13:4106, provides in part:
Section 4106. Deficiency judgment prohibited if sale made without appraisement
If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
[[Image here]]
Appellant contends that this Act applies to the contract of lease in this case as the terms of the lease conferred an option to purchase the vehicle on the lessor. As such, argues appellant, he has an ownership interest in this property which warrants the application of La.R.S. 13:4106 and its requirement for an appraisal prior to sale.
In support of his position, Nunnery cites Executive Car Leasing Company of New Orleans, Inc. v. Alodex Corporation, 279 So.2d 169, 172 (La.1973) wherein the court found that the Deficiency Judgment Act did not apply to a lease of a vehicle, and in so holding, stated:
The lease agreement in question confers no right of ownership onto the lessee. It is not, for instance, a lease-purchase agreement, by which the lessee obtains the absolute right to purchase or to receive title to the vehicle, so that the monthly rentals can also be regarded as payments on a purchase price. The leased vehicle remained at all times the property of the lessor, with the lessee having no right of ownership of it, or no-right to obtain ownership of it.
The Deficiency Judgment Act, La.R.S. 13:4106, 4107, thus does not apply. The Act is designed to protect against a creditor's non-judicial sale of a debtor’s property.
Appellant argues conversely that since he possessed an option to purchase the vehicle and was responsible for the repairs and operating expenses of the vehicle, the vehicle should be considered to be his property which subjected the subsequent sale to the provisions of the Deficiency Judgment Act.
However, the Louisiana Lease of Movables Act is the specific legislation which governs all leases of movable property. The Deficiency Judgment Act deals with a creditor’s sale of property belonging to a debtor. The lessor in this case retained the ownership of the subject vehicle, although *1045 the lessee was given an option to purchase the vehicle. If the lessee exercised this option to purchase, the lease provided that the lessee could purchase the vehicle from the lessor for the Estimated End of Term Wholesale Value, which in this case was specified to be $8,739.00. This lease did not confer on the lessee an ownership interest in the vehicle, but rather all rights and remedies granted to a lessee under the law. The provisions of the lease specifically provide that the lessee has “absolutely no equity or other ownership rights in the vehicle or its replacement parts” unless the lessee exercises the purchase option, which Nunnery did not do.
The Louisiana Lease of Movables Act directly governs the lease in this case, and there is no requirement either under the statute or specified in the lease that the lessor obtain an appraisal prior to the sale of the leased property on the lessee’s default. Appellant’s assignment lacks merit.

Assignment No. 2

Appellant next argues that the trial court erred in admitting into evidence three written bids which were obtained on the vehicle prior to its sale pursuant to the lease agreement. Appellant contends that these bids are out of court statements which constitute inadmissible hearsay under the provisions of La.C.E. art. 801(C). In support of his position, appellant cites Roy v. Roy, 382 So.2d 253 (La.App. 3d Cir.1980) which holds that bona fide offers to purchase are not admissible as evidence to establish the value of property.
In the present case, the bids on this vehicle were introduced into evidence by Cenval to show that it had complied with the provisions of the lease which required the lessor to obtain three written cash bids on the vehicle prior to its sale. The lease also provided that the highest bid on the vehicle would be considered the Realized Value for purposes of determining the balance due on the lease.
Georgia Green, Cenval’s representative from Houston, testified that she submitted this particular vehicle for bidding and that she had received three bids on it. At trial, she identified each of the bids and testified that the highest bid she received was in the amount of $4,500.00. She stated that the vehicle was sold for this amount. These bids were not introduced into evidence to prove the value of the vehicle at the time of sale. Rather, they were introduced to prove that the bids were received and the amount of the highest offer. As such, these documents do not constitute inadmissible hearsay and wé find no error of the trial court in allowing them into evidence. This assignment is without merit.

Assignment No. 3

Applicant argues that the damages awarded to Cenval were unreasonable. The trial judge, in its reasons for judgment, listed the following breakdown of damages:
BREAKDOWN OF DAMAGE AWARD
1.Balance on lease minus . $15,503.00
realized value of car — 4,500.00
11,003.97
2. Disposition charge 250.00
3. Late charge 60.00
4. Transportation cost 250.00
5. Repair charge 870.45
6. Early termination charge 420.55
7. Fees and Taxes 514.20
TOTAL $13,369.17
Appellant first contends that the “Balance on Lease” figure is contrary to public policy as it requires the lessee to pay future rentals following the termination of the lease which is prohibited by La.R.S. 9:3318. Nunnery argues that only 27 monthly payments were remaining on the lease at $413.16 per month for a total of $11,155.32. However, the contract of lease entered into by the parties provided that upon termination of the lease, the lessee would be liable for the Adjusted Lease Balance on the vehicle less its Realized Value. Section 14 of the lease specifically sets forth the manner in which the adjusted lease balance is calculated based on the depreciation of the vehicle. Evidence at *1046 trial indicated that this amount was $15,-503.00.
The Realized Value as defined in the lease is the highest bid on the vehicle received by the lessor and in this case was $4,500.00. Appellant argues that this amount is unreasonable in light of the fact that the vehicle’s residual value as specified in the lease is $8,739.00 and the wholesale value at the time of the sale was $10,500.00. Testimony at trial reveals that the wholesale value of the car at the time of sale was $8,725.00, and that the car was in very poor condition and not able to be operated. We cannot say that the sale of the vehicle in this condition for $4,500 is unreasonable.
Section 12 of the lease dealing with early termination provides for a disposition fee in the amount of $250.00, which is an administrative fee for sale of the vehicle, including advertisement and legal fees. This section also provides for an early termination charge which recaptures the investment tax credit lost by the lessor. Testimony at trial indicates this amount to be $420.55, and the procedure for calculating this amount is contained in the lease. In addition, this section obligates the lessor to pay official taxes imposed in connection with the lease termination, such as sales taxes on the deficiency amount, totalling $514.20 in this case.
Further, testimony at trial showed that Nunnery had remitted late payments on three occasions amounting to $60.00 as provided for in Section 4 of the lease agreement. Finally, Section 19 of the lease provides that the lessee shall be responsible for all collection, repossession, storage and legal costs. Testimony at trial proved that Cenval incurred $250.00 in transporting the vehicle to Houston for sale, and $870.45 to have the vehicle repaired.
The parties in the present case stipulated in the written contract as to the measure of damages in case of default. All of the damages claimed by Cenval are expressly authorized under specific provisions of the lease contract which was signed by Nunnery. Although La.R.S. 9:3325 provides that the damages claimed by the lessor must be reasonable, there is nothing in the record which indicates that any of these charges were unreasonable. Rather, there is ample testimony in the record which supports the lessor’s claim that these damages were both reasonable and authorized by the contract between the parties. We are unable to say that the trial court’s determination of damages is manifestly erroneous.
Accordingly, the judgment of the trial court is affirmed. Defendant is to pay all costs of this appeal.
AFFIRMED.