# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30970

United States Court of Appeals
Fifth Circuit

**FILED**
November 12, 2019

Lyle W. Cayce
Clerk

BANK OF THE WEST,

      Plaintiff - Appellee Cross-Appellant

v.

DANNY K. PRINCE,

      Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Bank of the West and Danny K. Prince cross-appeal the district court's damages award in this breach-of-contract suit. We agree with the district court that the liquidated damages provision of the parties' contract is unenforceable because it contravenes the Louisiana Lease of Movables Act. However, we hold that the district court erred by basing its alternative damages calculation on the expectations of the lessor's assignee, Bank of the West, rather than those of the original lessor, Summit Funding Group. We therefore affirm the district court's holding that Bank of the West was not entitled to contractual liquidated damages, but we vacate the district court's alternative damages award and remand for recalculation.

No. 18-30970

## I.

In May 2014, Gladiator Energy Services, LLC[1] leased a trailer-mounted frac unit ("the Equipment") from Summit Funding Group, Inc. Danny K. Prince and Steven Cloy Gantt personally guaranteed the Lease on behalf of Gladiator. The Lease, which was to last until November 2018, set a base rent of just under $20,000 per month. It provided that, in the event of default, Summit could exercise one or more of a range of remedies, including:

> (iv) recover from Lessee all accrued and unpaid amounts, (v) recover from Lessee, as liquidated damages for loss of bargain and not as a penalty, the present value of all amounts to be paid by Lessee for the remainder of the Firm Term, or any successive period then in effect, discounted at the rate of 2% per annum, which amount will become immediately due and payable, (vi) demand that Lessee return the Equipment in strict compliance with the terms hereof . . . (xi) recover from Lessee all amounts incurred by Lessor in enforcing its rights and remedies hereunder, including, but not limited to, Lessor's repossession costs . . . reasonable attorneys' fees, and reasonable internal costs . . . .

Summit subsequently assigned its interest in the lease to Bank of the West through a nonrecourse promissory note for $832,147.91. In February 2016, Gladiator defaulted on the lease by failing to make its monthly payment. In July 2016, Gladiator voluntarily surrendered the Equipment to the Bank at Gladiator's facility in Arcadia, Louisiana. The Bank then sold the Equipment at auction for $320,964.00.

On July 26, 2016, the Bank sued Prince and Gantt to recover the remaining amount due under the lease, plus costs and attorneys' fees. The case against Gantt was stayed when he filed for bankruptcy in September 2016, so only Prince participated as a defendant in the litigation. In July 2017, the

---

[1] Originally a Louisiana limited liability company, Gladiator subsequently converted to a Texas limited liability company before ceasing operations altogether.

district court granted the Bank's motion for summary judgment as to Prince's liability but denied it as to damages, finding the Bank's evidence "insufficient . . . to determine the amount of the debt." Shortly thereafter, Prince obtained new counsel and the Bank filed an amended complaint. The district court denied the parties' cross-motions for summary judgment in January 2018 and ordered additional briefing on damages.

The parties agreed that Prince owed past-due rent of $118,916.46. However, they disagreed about what else, if anything, the Bank was entitled to collect. The Bank contended that Prince also owed contractual liquidated damages, defined by the Lease as the full amount of future rental payments discounted to present value at a rate of two percent per annum. After subtracting the proceeds of the Equipment sale, the Bank calculated its contractual liquidated damages at $333,628.79.[2] Prince argued that the Lease's liquidated damages clause was invalid under the Louisiana Lease of Movables Act ("LLMA"), so he should be held accountable only for the agreed-upon sum of past-due rent.[3]

The district court agreed with Prince in part, holding that the LLMA barred the Bank from both repossessing the Equipment *and* recovering accelerated rent. However, the court reasoned, "some award of reasonable damages" was still warranted. It therefore set out to determine an appropriate figure on its own. It started with what it termed the Bank's "initial investment"—the $832,147.91 the Bank had loaned Summit in exchange for Summit's assignment of the Lease. Reasoning that the liquidated damages award should approximate the Bank's loss, the court calculated as follows:

---

[2] At the time of Gladiator's default, it still owed 34 monthly payments of approximately $20,000 each.

[3] *See* LA. STAT. ANN. § 9:3318.

No. 18-30970

| | |
|---|---|
| **Bank's Initial Investment** | $832,147.91 |
| **Lease Payments Made** | ($237,832.92) |
| **Proceeds from Equipment Sale** | ($320,964.00) |
| **Past Due Rent Owed** | ($118,916.46) |
| **Total** | $154,434.53 |

Thus, in addition to past-due rent and attorneys' fees, the district court awarded the Bank $154,434.53 in liquidated damages—far less than it sought under the Lease but far more than Prince conceded he owed. These cross-appeals followed.

## II.

### A.

We review "a grant of summary judgment *de novo*, applying the same standard as the district court."[4] "Summary judgment is called for only 'if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[5]

### B.

The LLMA "applies to all leases of movable property located in" Louisiana.[6] It provides that in the event of default by the lessee, the lessor may either (1) sue "to recover accelerated rental payments and additional amounts that are then due and outstanding and that will become due in the future over

---

[4] *Kinsale Ins. Co. v. Georgia-Pacific, LLC*, 795 F.3d 452, 454 (5th Cir. 2015) (quoting *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009)).

[5] *Deshotel v. Wal-Mart La., LLC*, 850 F.3d 742, 746 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(a)).

[6] *Walnut Equip. Leasing Co., Inc. v. Moreno*, 643 So. 2d 327, 330 (La. Ct. App. 1994). The parties agree that the LLMA governs this case. The Lease purports to select Ohio law, but that clause is invalid under the LLMA. *See* LA. STAT. ANN. §§ 9:3303(F)(1)–(2) (invalidating "leases of movable property . . . in which the lessee consents to the jurisdiction" or venue of another state); *see also Ha Thi Le v. Lease Fin. Grp., LLC*, 2017 WL 2915488, at *4 (E.D. La. May 9, 2017) ("Louisiana has a strong public policy against the inclusion of forum selection clauses in leases of movables . . . located in Louisiana.").

the full base term of the lease"; or (2) cancel the lease, repossess the leased property, "and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement."[7] The statute expressly states that its remedies "are not cumulative in nature."[8] In other words, "[t]he lessor may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment."[9]

In any case, a court may "award liquidated damages to the lessor only if it finds the amount thereof to be reasonable."[10] If the court finds the contractual liquidated damages "unreasonable, or if there is no such stipulation, then the court may, in its discretion, award liquidated damages to the lessor."[11] In short, regardless of the language of the parties' contract, a lessor has a "right to recover liquidated damages" only "to the extent the court finds them reasonable."[12]

Of course, even when a court elects to create its own liquidated damages award, it must still follow Louisiana law. Louisiana Civil Code Article 1995, which governs damages in breach-of-contract cases, provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."[13] In other words, a "stipulated damage clause should reasonably approximate the lessor's loss and profits [but] should not be

---

[7] LA. STAT. ANN. §§ 9:3318(A)(1)(a)–(b).

[8] *Id.* § 9:3318(A)(2).

[9] *Id.*; *see Express Blower, Inc. v. Earthcare, LLC*, 410 F. App'x 742, 747 & n.11 (5th Cir. 2010) (unpublished) (per curiam).

[10] LA. STAT. ANN. § 9:3325(A).

[11] *Id.* § 9:3325(B).

[12] *Ouachita Equip. Rental Co., Inc. v. Baker Brush Co., Inc.*, 388 So. 2d 477, 480 (La. Ct. App. 1980).

[13] LA. CIV. CODE ANN. art. 1995.

No. 18-30970

penal."[14] This Court reviews the "imposition of liquidated damages . . . for abuse of discretion."[15]

## III.

## A.

As noted above, the LLMA requires lessors to choose between two exclusive sets of remedies: (1) cancelling the lease and collecting accelerated rental payments, or (2) repossessing the property and collecting liquidated damages.[16] "Any provision of a lease agreement to the contrary notwithstanding, the lessor is allowed to select one remedy or the other, but he is not allowed to cumulate both."[17] In the event of default, the Summit Lease provides for liquidated damages of "the present value of all amounts to be paid by [Gladiator] for the remainder of the" Lease term. By defining liquidated damages in terms of future rental payments, the Lease straddles the line between the LLMA's two exclusive remedial classes: Whereas the statute prohibits lessors from pursuing both repossession and accelerated rent, the Lease provides for just that combination of remedies, albeit under the label of liquidated damages. We must decide whether the Lease's liquidated damages provision is enforceable despite its apparent conflict with the governing statute.

---

[14] *Am. Leasing Co. of Monroe, Inc. v. Lannon E. Miller & Son, Gen. Contracting, Inc.*, 469 So. 2d 325, 328 (La. Ct. App. 1985).

[15] *Dacar v. Saybolt*, 914 F.3d 917, 924 (5th Cir. 2018).

[16] LA. STAT. ANN. § 9:3318(A)(2); *see Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 953 (5th Cir. 1991) (noting that there are "only two options available" to lessors under the LLMA).

[17] *Gen. Elec.*, 950 F.2d at 953; *see also Day Leasing & Ins., Inc. v. Hart*, 619 So. 2d 114, 117 (La. Ct. App. 1993) ("[I]f the lessor recovers possession of the leased movable, then his remaining remedy is for past-due rent and liquidated damages; by recovering the property, a lessor waives his right . . . as to accelerated rentals . . . .").

No. 18-30970

The Bank claims the Lease's language is consistent with the second set of remedies under the LLMA.[18] After all, the Lease does not call for repossession and accelerated rental payments; it calls for repossession and liquidated damages *in the amount of* accelerated rental payments discounted to present value. The Bank disclaims any attempt to circumvent the LLMA—although "*based* on future rental payments, [the contractual liquidated damages provision] is not accelerated rent but a means of calculating the loss of an expected return on investment" for the Bank. Thus, the Bank argues, we should hold the Lease fully enforceable or, "[a]t a very minimum, . . . affirm the District Court's award" of reduced liquidated damages. The Bank emphasizes that the parties freely bargained for the remedial provision, and it attempts to distinguish the Lease's liquidated damages provision from accelerated rent on the ground that the Lease imposes a two percent discount.

In Prince's view, the present-value discount is immaterial: The Lease contravenes the LLMA by defining liquidated damages—a remedy available only under the second set of statutory remedies—as the total of all future rental payments, a sum available only under the first set of remedies. Moreover, neither arms-length bargaining nor artful drafting can create an exception to a governing statute.[19]

We agree with Prince and the district court that following "the formula provided in the Lease for calculating liquidated damages" would "circumvent Louisiana law." The LLMA "means what it says": a lessor must choose one of the statute's two categories of relief—he cannot have both. Because the Lease's liquidated damages provision would allow the Bank to evade the statutory

---

[18] LA. STAT. ANN. § 9:3318(A)(1)(b).

[19] *See Gen. Elec.*, 950 F.2d at 954 n.22 ("Section 3318(A)(2) of the [LLMA], prohibiting the lessor from both collecting all future rental and terminating the lease and re-possessing the lease property, reflects Louisiana public policy and thus cannot be varied by the contract.").

prohibition on cumulative remedies, the district court did not abuse its discretion in finding it unreasonable.

We are not persuaded by the Louisiana appellate decisions the Bank cites, which are subordinate to the LLMA under Louisiana's civilian methodology.[20] The Bank is correct that in *Cenval Leasing Corp. v. Nunnery*, the appellate court appears to have allowed the lessor to recover possession of a leased car *and* the remaining balance on the lease.[21] Without discussing the tension between its result and the LLMA's prohibition on cumulative remedies, the court determined that the damages award was not unreasonable because it followed the lease provision.[22] However, "in Louisiana, courts must look first and foremost to the state's 'primary sources of law: the State's Constitution, codes, and statutes.'"[23] Not only is the *Cenval* court's decision "a secondary law source in Louisiana,"[24] but it contravenes the plain text of the LLMA and other Louisiana cases finding that the LLMA does *not* permit cumulative recovery.[25]

The Bank also relies heavily on *First National Bank of Lafayette v. Edwards*,[26] which it cites for the proposition that a lessor may "recover future rentals for the remainder of the term of a lease of equipment as liquidated damages," even if it has already "repossessed and sold the equipment." The Bank overreads the case. The *Edwards* court determined only that the lessor could sue for liquidated damages, *subject to the court's reasonability*

---

[20] *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

[21] 577 So. 2d 1042, 1045–46 (La. Ct. App. 1991).

[22] *Id.* at 1046.

[23] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem.*, 179 F.3d 169, 175 (5th Cir. 1999)).

[24] *Prytania*, 179 F.3d at 175.

[25] *See, e.g., Gen. Elec.*, 950 F.2d at 953; *Day Leasing*, 619 So. 2d at 117; *Am. Leasing*, 469 So. 2d at 329.

[26] 465 So. 2d 983 (La. Ct. App. 1985).

*determination.*[27] The trial court had calculated damages on an entirely separate basis, so the appellate court had no opportunity to opine on the reasonableness of awarding accelerated rent after a lessor has sold the equipment.[28]

In short, the plain language of the LLMA forbids a lessor from both repossessing leased equipment *and* collecting accelerated future rental payments. Because the Lease's liquidated damages clause authorizes just this combination of remedies, the district court properly held it unenforceable. We, like the district court, "agree[] with Prince that lessors cannot be allowed to circumvent Louisiana law by simply including a lease provision allowing liquidated damages in the amount of future rent payments."

## B.

Because the Lease's liquidated damages clause is invalid under the LLMA, it was proper for the district court to disregard the contractual provision and fashion its own award of liquidated damages.[29] However, the question remains whether the court abused its discretion by using the incorrect baseline for its alternative calculation. Again, the district court began its calculation "by considering the Bank's initial investment in the Lease"—the $832,147.91 the Bank loaned Summit in exchange for Summit's assignment of the Lease. The court then subtracted Gladiator's pre-default rental payments, the proceeds of the Equipment sale, and the agreed-upon sum of past-due rent to reach its ultimate award of $154,434.53.

Prince argues that the district court erred by basing its calculation on the Bank's lost investment rather than on Summit's. As Prince points out, the original parties to the Lease were Summit and Gladiator; the Bank only

---

[27] *Id.* at 985.
[28] *Id.* at 986.
[29] LA. STAT. ANN. § 9:3325(B).

entered the picture later, when Summit assigned the Lease to the Bank. Because damages are generally limited to the "loss of profits that were contemplated or foreseen by the parties *at the time of the agreement*,"[30] Prince argues, the district court should have considered only the expectations of Summit, the original beneficiary of the Lease. After all, the Bank merely "stands in the shoes of Summit." Any loss the Bank suffered beyond past-due rental payments arose under the Bank's separate nonrecourse note with Summit, not under the Lease with Gladiator.[31]

Prince is correct. Article 1995 of the Louisiana Civil Code provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."[32] Summit was the original obligee in this case, so "the loss sustained by the obligee" is the amount that Summit would have lost in the event of a breach—in other words, the amount Summit expected to receive under the lease had no breach occurred. Instead, the district court

---

[30] *Galloway v. Tenneco Oil Co.*, 313 So. 2d 317, 321 (La. Ct. App. 1975) (emphasis added).

[31] Prince further argues that the Bank is not entitled to *any* liquidated damages because its note with Summit was nonrecourse. Because the Bank had no recourse against Summit when Gladiator defaulted, Prince claims, Summit did not suffer any damage as a result of the default—and because the Bank stands in Summit's shoes, it cannot recover damages either. Prince cites no case law to support this circular logic. Either the Bank's damages are based on the pre-assignment expectations of Summit (as we hold), or they are based on the post-assignment expectations of the Bank itself (as the district court found). Prince cannot have it both ways. Damages cannot be determined by both Summit's pre-assignment expectations *and* the Bank's post-assignment remedies. In short, the promissory note limited the *Bank's* remedies against Summit; it did not, and could not, limit Prince's obligations under the Lease.

[32] LA. CIV. CODE art. 1995; *see Am. Leasing*, 469 So. 2d at 328–29. At oral argument, counsel for the Bank pointed out that the district court did not take the Bank's lost profits into account; it only attempted to get the Bank "back to zero," i.e., the position it was in before it contracted with Summit. Although we reject the Bank's argument that its own expectations, rather than Summit's, were the proper starting point for the district court's damages calculation, we acknowledge that Article 1995 contemplates damages for lost profits. Thus, on remand, the district court should consider not only what it would take to restore Summit to its *status quo ante* but also what profits Summit expected to make off its initial lease with Gladiator.

started with the *Bank's* expectations under a different agreement—the promissory note it issued to Summit. However, the note did not confer on the Bank additional rights to payment that Summit had not possessed; it simply placed the Bank in Summit's shoes. Thus, Summit's expectations under the lease are the appropriate baseline from which to calculate damages. Because it is not clear from the record or the parties' briefs how much Summit anticipated making on the original Lease, we must vacate in part and remand to allow the district court to recalculate its damages award.

## IV.

The district court correctly ruled that Bank of the West is not entitled to contractual liquidated damages. We must, however, vacate its award of alternative damages and remand for recalculation based on the expectations of the original lessor, Summit Funding Group, Inc.