EDWARD PAGELS
v.
MARY ELLEN BROWN
2008 CA 0311
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
KEITH WHIPPLE HOUMA, Louisiana Counsel for Plaintiff/Appellant Edward Pagels
JOAN M. MALBROUGH HOUMA, Louisiana Counsel for Defendant/Appellee Mary Ellen Brown Pagels
BEFORE: GAIDRY, McDONALD, AND McCLENDON, JJ.
McCLENDON, J.
Plaintiff, Edward Pagels, appeals the judgment of October 5, 2006, which denied his request to modify an Amended Qualified Domestic Relations Order (QDRO) directed to the El Paso Corporation Retirement Savings Plan (Plan) and to require the defendant, Mary Ellen Brown Pagels,[1] to sign the modified QDRO. We affirm.

PROCEDURAL AND FACTUAL BACKGROUND
In September of 2004, the trial court signed a consent judgment of partition. The 2004 judgment provided that: "Fifty (50%) percent of any and all community investments, (see detailed list attached hereto as "Exhibit B,"), was transferred to each party. Exhibit B listed the Plan as number 28. Asset or investment number 28 contained the following notation: El Paso Energy Corporation Retirement Savings Plan, in the name of Edward Pagels, as of March 19, 2002 . . . ." The judgment was not appealed. The QDRO in the record, which was signed by the trial court on September 6, 2005, provided that: "The order assigns to the alternate payee an amount equal to 50% of the participant's vested account balance under the Plan as of the following assignment date: March 19, 2002." Mr. Pagels did not challenge the QDRO in 2005.
According to the record, the Plan sent Mr, Pagels and Ms. Pagels a letter dated April 5, 2006. The letter stated that, on February 10, 2006, Mr. Pagels was notified by the Plan administrator of the Plan's determination of benefits pursuant to the QDRO, which had previously been served on the Plan. The February letter had also advised Mr. Pagels that he had 30 days to contest the determination. Further, the April, 2006 letter noted that Mr. Pagels' contest of the determination was not received until March 23, 2006. Finally, the April, 2006 letter notified Mr. Pagels that his challenge to the Plan administrator's determination had been denied.
On May 8, 2006, Mr. Pagels filed a rule to show cause why the QDRO should not be modified to reflect the allegedly correct partition method and why Ms. Pagels should not be required to sign the modified QDRO. He asserted that 50% of the shares held as of March 19, 2002, should have been awarded to Ms. Pagels, rather than 50% of the value of the investment on the specified date.
By judgment dated October 5, 2006, the trial court denied the request for modification. On appeal, Mr. Pagels essentially complains of the trial court's refusal to modify the QDRO.[2] His argument primarily rests on the language from the 2004 consent judgment of partition that awards "Fifty (50%) percent of any and all community investments .. .."

APPLICABLE LEGAL PRECEPTS
A "consent judgment" is, in effect, a bilateral contract between the parties, which gets its binding force from the consent the parties gave, rather than from adjudication by the courts. Richardson v. Richardson, 2002-2415, p. 4 (La.App. 1 Cir. 7/9/03), 859 So.2d 81, 84. Interpretation of a consent judgment, that is, a contract between the parties, is a determination of the common intent of the parties. Richardson, 2002-2415 at p. 4, 859 So.2d at 84-85; see also LSA-C.C. art. 2045. Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable, and fair basis. Freeport-McMoran, Inc. v. Transcontinental Gas Pipe Line Corporation, XXXX-XXXX, p. 7 (La.App. 1 Cir. 10/14/05), 924 So.2d 207, 212, writ denied 2005-2358 (La. 3/31/06), 925 So.2d 1256; LSA-C.C. art. 2050.
Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Kuswa & Associates, Inc. v. Thibaut Construction Co., Inc., 463 So.2d 1264, 1266 (La. 1985). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties." LSA-C.C. art. 2053; Hampton v. Hampton, Inc., 97-1779, pp. 6-7 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189.
The trial court is afforded much discretion in the partition of community property assets and investments. Rao, v. Rao, XXXX-XXXX, p. 6 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 360, writ denied, 2005-2453 (La. 3/24/06), 925 So.2d 1232; see LSA-R.S. 9:2801. Absent an abuse of discretion or manifest error, the trial court's determinations and valuations may not be overturned. Rao, XXXX-XXXX at p. 6, 927 So.2d at 360-61.

ANALYSIS
The unchallenged consent judgment ordered that Ms. Pagels receive 50% of all community investments. Investment number 28 of Exhibit B did not reference the terms "shares" or "value;" only the words "Plan, ... as of March 19, 2002 ...." However, the language of the 2005 QDRO was clear and specifically provided that: "The order assigns to the alternate payee [Ms. Pagels] an amount equal to 50% of the participant's vested account balance under the Plan as of the following assignment date: March 19,2002."
Although no specific method of dividing the Plan was mentioned in the 2004 consent judgment, it appears from the record that for months before filing his rule to show cause, Mr. Pagels was aware of the QDRO language and its division based on the account's value as of the designated date. Despite the clear language of the 2005 QDRG, Mr. Pagels did not file a court challenge until May of 2006.
Perhaps the trial court reviewed Mr. Pagles' conduct after the consent judgment, during the development of the QDRO, and particularly after the 2005 QDRO, and found that the lack of a more timely objection indicated that the trial court correctly interpreted the intent of the parties to partition based on the value of the account. Or, the trial court may have exercised its discretion and simply determined that a division of 50% of the investment as of the designated date, which the consent judgment ordered to be paid to Ms. Pagels, fairly equated to 50% of the value on that date. Although we may have found differently if sitting as the trier of fact, based on our review, and considering the particular circumstances of this case and applicable law, we cannot say that the that the trial court abused its discretion or was clearly wrong in its determinations or that the record fails to provide reasonable support for the denial of Mr. Pagel's request for modification. See Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

CONCLUSION
For these reasons, we affirm the judgment. The costs of the appeal are assessed to plaintiff-appellant, Mr. Edward Pagels.
AFFIRMED.
NOTES
[1] Although the cover sheet of the record in this case designates the defendant as Mary Ellen Brown, the name used in this opinion is the one appearing in the judgments and order at issue on appeal.
[2] In his brief, Mr. Pagels also challenges the validity of a QDRO allegedly signed ex parte on August 29, 2006, months after he filed his rule seeking modification. However, the referenced 2006 document is not a part of the record on appeal, and thus, its validity is not before us. We note that the valuation language allegedly appearing in the 2006 document is the same language used in the 2005 QDRO.